

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1711-12

**GARY PATRICK REEVES, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

**COCHRAN, J., delivered the opinion of the unanimous Court.**

O P I N I O N

A jury convicted appellant of murder[1] for killing his friend, Jeromie Jackson. At trial,

appellant admitted that he stabbed Jeromie, but claimed he did so in self defense. The trial

judge instructed the jury on the issue of self defense,[2] but, over appellant's objection, he also

---

[1] *See* TEX. PENAL CODE § 19.02.

[2] *See* TEX. PENAL CODE § 9.32.

instructed the jury on provocation as a qualification on the self-defense issue.[3] The jury rejected appellant's self-defense claim, found him guilty of murder, and sentenced him to eighteen years' imprisonment.

On appeal, appellant raised one claim: The trial judge erred by including the provocation instruction over his timely objection. The court of appeals agreed, and, finding that appellant had suffered some harm under *Almanza v. State*,[4] reversed appellant's conviction and ordered a new trial.[5] We granted the SPA's petition to review only the court of appeals's determination that appellant suffered harm from the inclusion of the provocation instruction.[6] We agree with that court that appellant did suffer actual harm when his self-defense claim was improperly limited by the inclusion of an unwarranted provocation instruction.

## I.

One April evening, appellant and Jeromie Jackson were at Nicole Williams's home

---

[3] *See* TEX. PENAL CODE § 9.31(a)(4).

[4] 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g).

[5] *Reeves v. State*, No. 01-10-00395-CR, 2012 WL 5544770 (Tex. App.—Houston [1st Dist.] Nov. 15. 2012) (op. on reh'g) (not designated for publication). The court of appeals had first issued an opinion dated January 26, 2012, *Reeves v. State*, No. 01-10-00395-CR, 2012 WL 246058 (Tex. App.—Houston [1st Dist.] Jan. 12. 2012, mem. op., not designated for publication), but, after granting the State's motion for rehearing, the court withdrew its original opinion and issued a second one that also reversed appellant's conviction and remanded the case for a new trial. It is from this second opinion that the State Prosecuting Attorney (SPA) seeks review.

[6] The State's precise ground for review was, "Can the submission of an inapplicable, superfluous qualification instruction on provocation cause some harm when the charge properly included presumption and retreat provocation instructions?"

talking about going to a bar for a few drinks. Appellant and Jeromie were trying to convince Nicole's boyfriend, Jesse Adams, to go with them. Despite their encouragement and offers to pay for his drinks, Jesse opted to stay home. Appellant and Jeromie decided that they would go anyhow. Knowing that appellant's car was not working, Jeromie offered to drive but "needed a couple dollars in the tank for gas." Appellant agreed.

Jeromie drove them to a sports bar about 15 minutes away.  Once they arrived, appellant bought a bucket of beers and some chicken wings for them to share. They each drank about three beers in addition to a couple of cocktails. The two men left the bar shortly before midnight. Appellant thought that, because he paid the bar tab, he need not contribute any money for gas. Jeromie disagreed and told appellant that he had to give Jeromie a few extra dollars to take him home. Appellant agreed, but no money changed hands at this time.

Jeromie did not stop for gas and did not take appellant home. Instead, he drove back to Nicole's home where he planned to buy a rock of crack cocaine from Jesse. As the men pulled up, they saw Nicole's sister, Donna Whitfield, outside talking with her friend, Chris.[7]

As they got out of the car, the men were arguing over how much money appellant would give Jeromie for gas. Jeromie insisted that appellant give him ten dollars. Appellant refused.  He offered five dollars and explained, "If you needed a specific amount, you should have told me before I spent it at the club." Appellant testified that he felt like he was being "shaken down" for extra money so Jeromie could buy a rock of crack cocaine.

---

[7] Both Jesse and Nicole were inside asleep.

From this point forward, each witness recalled the events differently.  What they all agreed on is that, at some point during their heated argument, the two men began wrestling around on the ground.  Donna, who was still outside, testified that she saw "grabbing and pulling," but did not see any punches thrown. Eventually, her friend Chris broke up the "tussle."[8] After the bout ended, Donna recalled Jeromie saying, "I'm through with you, I'm through with it, I don't want to do this," before getting into his truck and driving off.[9] Appellant stayed in Nicole's yard and collected the things that had fallen out of his pocket during the tussle. Once Jeromie left, Nicole and Chris went back up to the porch.[10]

Hearing noise outside, Jesse woke up and decided to investigate the commotion. He saw Jeromie park his truck a short distance down the road, then get out, and start walking back to Nicole's home. As Jeromie approached, Jesse asked him what was going on, and Jeromie replied, "Man, he bit me, he bit me." Jeromie's nose had visible bite marks on it.

Some time after the initial fight, appellant told Jesse, "[I'm going] to do something bad to him. I'm going to kill him." Jesse, however, did not take appellant seriously because, in his experience, appellant is "not a violent person at all." Jesse, thinking that he was acting

---

[8] Chris did not testify at trial.

[9] Appellant testified that, right before the men got into the fight, Jeromie "got mad and he approached me and was like: You about to make me take all your money."

[10] Because of her very poor eyesight, Donna could see little of what occurred after this point. She did not wear glasses or contact lenses and testified that "I can't hardly see you [the prosecutor]. I can't hardly see anybody."

as the mediator, escorted appellant off the property, right by where Jeromie was standing.[11]

Appellant and Jeromie "connected with each other," as they passed. They began to wrestle around on the ground again. The testimony regarding who had the advantage was conflicting.[12] But it is undisputed that eventually appellant took a pocket knife from his pocket and repeatedly stabbed Jeromie. As Jesse separated the men, appellant stabbed Jeromie one last time in the back.

Appellant walked a few feet away to catch his breath. When Jesse approached appellant and told him, "You killed Jeromie," appellant responded, "If you touch me, Jesse, I'm going to kill you too. I'm going to stab you too."[13]

After the conclusion of the evidence, the trial judge added a jury instruction on provocation as a limitation upon appellant's self-defense claim.[14] The instruction included both abstract and application paragraphs and was inserted immediately after the self-defense

---

[11] Nicole's yard is fenced in. The only way onto the property, without climbing over the fence, is through the driveway, where there is a break in the fence.

[12] The men were about the same height, with Jeromie weighing about 10–15 pounds more than appellant. Appellant said that Jeromie was on top, choking him, when he took out the knife. He testified that he asked Jesse for help a number of times, but that Jesse refused to do anything, instead saying, "How much are you going to give me?"

Jesse testified that appellant was on top of Jeromie and that, until appellant started stabbing Jeromie, no punches had been thrown. He believed that the two men were going to settle their dispute with their fists, and that is why he didn't feel the need to intervene.

[13] Immediately after the incident, appellant went to Anthony Matthews' home. He told Matthews about how he had stabbed Jeromie and explained, "Man, I f__ed up. I f__ed up. My life is gone. I f__ed up." The discussion awoke Matthews' father who, knowing the police would soon be on their way, told appellant he had to leave. Five days later appellant turned himself in.

[14] The instruction is set out below. *See infra* pages 9–10.

instruction. Appellant objected to its inclusion, arguing that there was no evidence to support a finding that appellant provoked the fight that resulted in Jeromie's death.

The court of appeals agreed, finding that (1) "the evidence was insufficient for a reasonable jury to find the necessary provocation beyond a reasonable doubt," and (2) appellant was harmed because "[t]he provocation instruction's presence in the jury charge implied that there was some evidence to support every element of the provocation doctrine when there was not."[15]

## II.

Not all jury-charge errors require reversal. In *Almanza v. State*,[16] we explained how reviewing courts should determine if a charge error requires reversal. The court should first determine if the defendant objected to the erroneous charge. If he did not, then he must show that the error was "fundamental" and that he suffered "egregious harm."[17] "This is a high and difficult standard which must be borne out by the trial record."[18]

If, however, the defendant did object at trial, then he will obtain relief if the record shows that he suffered "some harm."[19] This analysis requires a reviewing court to consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence,

---

[15] *Reeves*, 2012 WL 246058 at *5-6.

[16] 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g).

[17] *Id.* at 171.

[18] *Young v. State*, 283 S.W.3d 854, 880 (Tex. Crim. App. 2009) (Cochran, J., concurring).

[19] *Almanza*, 686 S.W.2d at 171.

and (4) other relevant factors present in the record.[20] This less-stringent standard still requires the reviewing court to find that the defendant "suffered some actual, rather than merely theoretical, harm from the error."[21] In the past, we have sometimes stated that the *defendant* must prove that he suffered "some harm." That is not accurate.[22] Neither the State nor the defendant has a burden to prove harm. In *Almanza*, we stated,

> If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.[23]

We adhere to that standard.

## III.

In this Court, the State concedes that the provocation instruction was given in error and that appellant properly objected at trial.[24] We therefore focus only on the question of

---

[20] *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

[21] *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008).

[22] *Id.* at 463.

[23] *Almanza*, 686 S.W.2d at 171.

[24] The court of appeals, in finding that there was no evidence to support the submission of a charge on provocation noted that (1) the evidence that appellant and Jeromie were arguing over gas money was insufficient to support an instruction; (2) it was only after the fighting had started that appellant threatened to kill Jeromie and bit his nose; therefore, he could not have provoked an attack that was already in progress; and (3) although circumstantial evidence may suffice to find provoking words or action, "if that circumstantial evidence provides no more than a suspicion," it is not sufficient. *Reeves*, 2012 WL 5544770 at *4. Furthermore, the fact that appellant had a pocketknife

whether appellant suffered "some harm" by the inclusion of the erroneous instruction.

The State argues that the instruction was harmless because (1) the jury was "not aware of the threshold sufficiency standard that applies to the attainment of a qualification provocation instruction;"[25] (2) the instruction had "absolutely no applicability to the facts before it;"[26] and (3) the provocation issue was already before the jury in the self-defense portion of the instruction. Despite the State's arguments, we conclude that appellant suffered actual harm. In conducting our analysis, we consider the first, second, and fourth prongs of the *Almanza* analysis to be particularly instructive.

## A.    The Entire Jury Charge.

The instructions begin with a two-page, easy-to-understand instruction on intentional murder and murder with intent to cause serious bodily injury resulting in death.[27]  The instruction includes both an abstract section, laying out the law in general terms, as well as an application section, applying the law to the facts of the case. This is the way instructions should be—clear, concise, and to the point.

---

on him was not sufficient to show that appellant provoked the fight.  *Id.*

[25] SPA's Brief at 6. In other words, perhaps the jurors thought a provocation instruction is given in every self-defense case.

[26] *Id.* at 7.

[27] *See* TEX. PENAL CODE § 19.02(b)(1), (2). The two-page instruction includes a half-page definition section.

What follows, however, is a six-page impenetrable forest of legal "argle-bargle"[28] that attempted to instruct the jury on the law of self-defense.[29] On pages one and two is the run-over sentence, "The defendant's belief that the force was immediately necessary is presumed to be reasonable if the defendant . . . did not provoke the person against whom the force was used."  A bit farther down, the instruction explains,

> If you find or believe the defendant had a right to be present at the location where the deadly force was used, that the defendant had not provoked the person against whom the deadly force was used, and that the defendant was not engaged in criminal activity at the time the deadly force was used, you are not to consider whether the defendant failed to retreat.

These two sentences are the only mention of provocation in the six-page self-defense charge. The remainder of the instruction sets out the other requirements of self-defense. While one might take issue with the cumbersome (even obtuse) nature of the instruction, the information contained within it is accurate.

Immediately after the self-defense instruction is the erroneous provocation instruction. Like the instructions before it, this instruction includes an abstract paragraph and an application paragraph. The instruction reads:

> You are further instructed as part of the law of this case, and as a qualification of the law on self-defense, that the use of force by a defendant is not justified

---

[28] *See United States v. Windsor*, ___ U.S. __, __133 S.Ct. 2675, 2709 (2013) (Scalia, J., dissenting).

[29] *See* TEX. PENAL CODE § 9.32. To give the reader an idea, the instruction is replete with paragraphs containing 80-plus words with multiple sub-sections that span the better part of a page. The self-defense application paragraph is a single sentence that contains 204 words.

if the defendant provoked the other's use or attempted use of unlawful force, unless

(a)     the defendant abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(b)     the other nevertheless continues or attempts to use unlawful force against the actor.

So, in this case, if you find and believe from the evidence beyond a reasonable doubt that the defendant, Gary Patrick Reeves, immediately before the difficulty, then and there did some act, used some language, or did both, as the case may be, with the intent on his, the defendant's, part, to produce the occasion for stabbing Jeromie Jackson, and to bring on the difficulty with the said Jeromie Jackson, and that such words and conduct on the defendant's part, if there was such, were reasonably calculated, and did, provoke the difficulty, and that on such account Jeromie Jackson attacked the defendant with deadly force, or reasonably appeared to the defendant to so attack him or to be attempting to attack him, and the defendant then stabbed Jeromie Jackson with a knife, in pursuance of his original design, if you find there was such, then you will find against the defendant on the issue of self-defense.

On the other hand, if you find from the evidence that the acts done or language used by the defendant, if any, were not, under the circumstances, reasonably calculated or intended to provoke a difficulty or an attack by Jeromie Jackson upon the defendant, or if you have a reasonable doubt thereof, then in such an event, the defendant's right of self-defense would in no way be abridged, impaired, or lessened, and, if you so find, or if you have a reasonable doubt thereof, you will decide the issue of self-defense in accordance with the law on that subject give other portions of this charge, wholly disregarding and without reference to the law on the subject of provoking the difficulty.

That first application paragraph contains 156 words in one sentence.  The second paragraph contains 125 words in one sentence.  Neither is comprehensible.[30]

---

[30] Compare pages 216-219 of Volume Two (Defenses) of the TEXAS CRIMINAL PATTERN JURY CHARGES concerning instructions on provocation.  The model instructions subdivide the various issues into short lists that jurors may read and understand without undue difficulty.  Perhaps most important, the pattern jury charge ensures that the jury understands that it is the State's burden

The trial judge must "distinctly set[] forth the law applicable to the case" in the jury charge.[31]  "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion."[32] While generally, "in the absence of evidence to the contrary, we will assume that the jury followed its written instructions,"[33] this presupposes that the instructions are understandable. Because these instructions were not, "this is not a case in which the reviewing court should apply the usual presumption that the jury understood and applied the court's charge in the way it was written."[34]

The State argues that the issue of provocation was already before the jury, specifically in the self-defense instruction. True, but this does not necessarily obviate any finding of harm. The provocation that was properly before the jury was provocation as an element of self-defense; that the defendant "did not provoke the person against whom the force was

---

to prove provocation beyond a reasonable doubt.  *See Smith v. State*, 965 S.W.2d 509, 514 (Tex. Crim. App. 1998) (a provocation instruction should be submitted to the jury only "when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt.").  The instruction used in this case does not make that burden clear.

[31] TEX. CODE CRIM. PROC. art. 36.14.

[32] *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977).  Preventing confusion is not a foreign concept in jury trial; many of the rules of evidence are designed to ensure that potentially confusing evidence is not considered by the jury. *See, e.g.*, TEX. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, *confusion of the issues*, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.") (emphasis added).

[33] *Miles v. State*, 204 S.W.3d 822, 827-28 (Tex. Crim. App. 2006).

[34] *Gelinas v. State*, 398 S.W.3d 703, 711 (Tex. Crim. App. 2013) (Cochran, J., concurring).

used." These two lines were buried in the six-page morass that was the self-defense instruction, and was not likely to have even been noticed, much less given consideration.

The provocation instruction that followed, however, was (slightly) more clear, more specific, and more substantial in length. It highlighted an element of self-defense that was not factually contested at trial. "If not called for by the facts, a charge on provoking the difficulty constitutes an unwarranted limitation on the right of self-defense."[35] We agree with the court of appeals that "[t]he provocation instruction's presence in the jury charge implied that there was some evidence to support every element of the provocation doctrine when there was not."[36]

We note that the physical location of the charge magnified its harm. The provocation instruction immediately followed the self-defense instruction, "which makes it more likely that the jury's attention was drawn to the State's provocation theory for avoiding appellant's claim of self-defense."[37] Further, it was the last substantive instruction: first came murder, then came self-defense, then came provocation-as-a-limitation. The rest of the charge was boilerplate. So the last substantive instruction that the jury read was the erroneous one.

---

[35] *Tave v. State*, 620 S.W.2d 604, 605 (Tex. Crim. App. 1981).

[36] *Reeves*, 2012 WL 5544770 at *6; *see also McCandless v. State*, 57 S.W. 672, 675 (Tex. Crim. App. 1900) ("however groundless the [provocation] charge may be, coming as it does from the court, it is calculated to make the jury believe that, in the opinion of the judge, there was evidence tending to show that appellant brought on the difficulty for the purpose of slaying his adversary and consequently such an instruction, not authorized by the testimony, is calculated to injure or impair the rights of the defendant.").

[37] *Mendoza v. State*, 349 S.W.3d 273, 283 (Tex. App.—Dallas 2011, pet. ref'd).

Finally, the abstract portion of the provocation instruction was clear as a bell. It even had tidy little numbering for the two elements: the jury should reject self-defense if it finds that the defendant "provoked the other's use of unlawful force" unless the defendant (1) abandoned the encounter, and (2) the victim nonetheless continued to use unlawful force against the defendant. Just as the instructions on murder were clear and simple, so the abstract instruction on provocation was clear and simple. The six pages of instructions on self-defense–the wording of which tracks Section 9.31 of the Penal Code–were impenetrable prose.

## B.      The Arguments of Counsel.

During the State's closing argument, the prosecutor explicitly pointed to that easily understood abstract portion of the provocation instruction:

> And then finally there is something that I ask that you pay close attention to in the charge. It's called provoking the encounter. And the judge read it for you. Okay? What it says–and I won't read the whole thing, but I'll read the beginning portion–you are further instructed as a part of the law on self-defense that the use of force by the defendant against another is not justified if the defendant provoked the other's use or attempted use of unlawful force. Okay?
>
> That's very important. So, basically, if the defendant did some action or if he said some words, or both, and that–those actions or words provoked the encounter–again, remember what the witness said. . . . If he provoked that encounter he is not justified in claiming self-defense. There is no self-defense. It's in the charge. Again, I ask that you read it. I'd ask that you pay close attention to it.

The State claims that the provocation instruction was harmless because it had

"absolutely no applicability to the facts before it." That may be true in a different case, but here the prosecutor referred the jurors directly to the improper instruction and asked that they "pay close attention to it." Not only did she refer to the concept in the abstract, she read a portion of the erroneous charge to the jury. This emphasized the improper instruction and brought it to the front of the jurors' minds.[38]

Furthermore, she was wrong on the law. She told the jury that if the defendant "did some action or said some words" and that action or those words "provoked the encounter," then "he is not justified in claiming self-defense." That is not correct. As the instructions stated, if the defendant provoked the other's use of force, then his self-defense claim fails *unless* he abandons the encounter and the other person nonetheless keeps attacking him.

The SPA argues that, because there was no evidence that appellant provoked the encounter, the jury must have ignored the erroneous instruction. Not in this case, not with the prosecutor's argument. The erroneous instruction was highlighted by the prosecution, and the jurors were told to "pay close attention to it." The SPA cannot now claim that the jurors not only ignored the instruction, they also ignored the prosecutor's argument.

---

[38] *See Kresse v. State*, No. 2-09-271-CR, 2010 WL 1633383, at *2 (Tex. App.—Fort Worth, April 22, 2010, no pet.) (not designated for publication) (finding "some harm" under *Almanza* when the improper charge was "introduced repeatedly throughout the trial and emphasized by the State during its opening statement and closing argument"); *see also Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005) (noting that a harm analysis properly considers "whether the State emphasized the error").

## C.    The Entirety of the Evidence.

Appellant testified to facts that, if believed, would have supported his self-defense claim. However, other witnesses testified to another set of facts that, if believed, supported appellant's conviction for murder. As an appellate court, we will not weigh in on this fact-specific determination, as that is a function reserved for a properly instructed jury.[39] We do, however, agree with the court of appeals that "the evidence of guilt was not so overwhelming that the erroneous provocation instruction was harmless."[40]

## D.    Other Relevant Evidence Contained in the Record.

It is also relevant to the harm analysis that the erroneous instruction (and the prosecutor's emphasis of it) undermined appellant's sole defense. In *Mendoza v. State*,[41] the Dallas Court of Appeals dealt with a similar issue. Mendoza was charged with murder for stabbing a friend after a night of drinking and cocaine use.[42] Mendoza admitted to the offense, but claimed he acted in self defense.[43] Over Mendoza's objection, the jury was charged on provocation as a limitation to Mendoza's self-defense claim.[44] The court of

---

[39] *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

[40]  *Reeves*, 2012 WL 5544770 at *6.

[41] 349 S.W.3d 273 (Tex. App.—Dallas 2011, pet. ref'd).

[42] *Id.* at 275–76.

[43] *Id.* at 276–77.

[44] *Id.* at 274.

appeals found the instruction harmful, noting that the defendant "testified that he stabbed [the victim], so his entire defense rested on the theory of self-defense. Thus any erroneous instruction that limited his self-defense theory was likely harmful."[45] Although an erroneous provocation instruction will not necessarily be harmful when self-defense is the sole defensive theory, that factor goes on the "some harm" side of the scale rather than the "no harm" side.

In this case, (1) the State misspoke about the law of provocation and then told the jury to pay careful attention to the erroneous instruction, and (2) the evidence concerning self-defense was hotly contested and appellant's version of events was, at a minimum, plausible, and, if believed, exonerating.

After considering all four of the *Almanza* factors, we conclude that appellant suffered some harm when the jury was instructed on the provocation doctrine absent any evidentiary support. We therefore affirm the judgment of the court of appeals.

Delivered: September 18, 2013
Publish

---

[45] *Id.* at 283 (citing *Tave v. State*, 620 S.W.2d 604, 605 (Tex. Crim. App. 1981)).