

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-14-00728-CR

Aghil **ANSARI**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 13, Bexar County, Texas
Trial Court No. 386397
The Honorable Monica A. Gonzalez, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Jason Pulliam, Justice

Delivered and Filed:  August 5, 2015

REVERSED AND REMANDED

        A jury convicted appellant Aghil Ansari of assault causing bodily injury.  The trial court

sentenced Ansari to one year in jail, probated for eighteen months, and assessed a $1,500.00 fine.

On appeal, Ansari raises several issues: (1) the trial court erred in refusing his request for an

additional peremptory challenge; (2) the trial court erred in overruling his objection to the

admission of an e-mail because the State failed to disclose the e-mail in violation of *Brady v.

Maryland*; (3) the trial court erred in refusing Ansari's requested jury instruction, which allowed

the jury to return a non-unanimous verdict; and (4) the written judgment conflicts with the trial

court's oral pronouncement of sentence with regard to the fine, requiring that the judgment be modified. Because we conclude that the trial court erred in refusing Ansari's requested jury charge, we reverse the trial court's judgment and remand this matter for a new trial.

## BACKGROUND

The evidence showed Ansari lived with his wife, Zahra Mahmoodi, and her nineteen-year-old daughter from a previous relationship, Shideh Sharifi. On the day of the incident giving rise to his conviction, Ansari took Ms. Sharifi to a mall so she could visit with her cousins. Later that day, Ansari and Ms. Mahmoodi decided to go out with friends, but first went to pick up Ms. Sharifi from the mall. There was a misunderstanding about Ms. Sharifi's location, resulting in Ansari going to the wrong mall. At this point, the testimony diverges. Ms. Mahmoodi testified her husband became angry because of the misunderstanding regarding Ms. Sharifi's location and struck her with his fist. Ms. Sharifi testified she saw blood on her mother's face when Ansari finally picked her up.

Ms. Sharifi got into the car and the three of them drove home. Ms. Sharifi testified that after she got into the vehicle, Ansari struck her mother, pulled her mother's hair, and pushed her mother's face into the passenger-side window. Ms. Mahmoodi confirmed her daughter's account. Once they returned home, Ms. Mahmoodi stated she went into the house and tried to call the police. However, Ansari tried to take the phone from her, pushing and shaking her. Thereafter, Ms. Sharifi called the police, who arrived soon after.

Ansari testified, disputing the testimony of both his wife and Ms. Sharifi. Ansari claimed his wife was verbally abusive, telling him he was incompetent and ignorant. She also spit in his face. Ansari denied assaulting his wife, testifying his wife called police to teach him a lesson. Ultimately, Ansari was arrested and charged by information with the offense of assault causing bodily injury.

Ansari pled not guilty and the case was tried to a jury. Before the trial court read the charge to the jury, Mr. Ansari requested the following addition to the jury charge:

> The State has presented evidence of more than one incident to prove that the accused committed the act alleged in this Information. You must find the defendant not guilty of this charge unless you all agree on which incident you believe occurred beyond a reasonable doubt.

> All the jurors must be unanimous as to whether the incident occurred to find the accused guilty. By the same token, you must find the accused not guilty of this charge if unanimity is reached only by having some of the jurors agree that one incident occurred and some of the other jurors agree that another incident or incidents occurred.

The trial court refused Ansari's proposed instruction. Ansari objected to the trial court's refusal. The jury found Ansari guilty and the trial court sentenced him to twelve months jail time, probated for eighteen months, and a $1,500 fine, $1,000 of which was probated according to the court's oral pronouncement. Thereafter, Ansari perfected this appeal.

## ANALYSIS

Because we find Ansari's third issue relating to his requested instruction on unanimity dispositive, we begin there. As stated above, Ansari contends the trial court erred in refusing to include his requested instruction on unanimity in the jury charge.

When analyzing a jury charge issue on appeal, this court first determines if there was an error, and if so, whether the error caused sufficient harm to warrant a reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Ochoa v. State*, 119 S.W.3d 825, 828 (Tex. App.—San Antonio 2003, no pet.). The amount of harm necessary to warrant a reversal depends on whether the appellant objected to the jury charge. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (citing *Alamanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)); *Ngo*, 175 S.W.3d at 743; *Ochoa*, 119 S.W.3d at 828. If the appellant objected to the complained of portion of the jury charge, then the record need only show he suffered some harm as a result of the error to obtain

a reversal. *Reeves*, 420 S.W.3d at 816; *Ngo*, 175 S.W.3d at 743; *Ochoa*, 119 S.W.3d at 828. On the other hand, if the appellant failed to object to the complained of portion of the charge, then he must show he suffered egregious harm to be entitled to a reversal. *Reeves*, 420 S.W.3d at 816; *Ngo*, 175 S.W.3d at 743; *Ochoa*, 119 S.W.3d at 828.

### *Error by the Trial Court?*

Jury unanimity is required in all criminal cases. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West Supp. 2014); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). In Texas, the jury must "reach a unanimous verdict about the specific crime that the defendant committed." *Cosio*, 353 S.W.3d at 771. This means "the jury must agree upon a *single and discrete incident* that would constitute the commission of the offense alleged". *Cosio*, 353 S.W.3d at 771 (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)) (emphasis added). The unanimity requirement ensures the jury agrees on the factual element underlying the charged offense, not that it merely agrees that a statute was violated. *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000). As applicable here, "non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Cosio*, 353 S.W.3d at 772. In this situation, it is the trial court's responsibility to ensure unanimity by instructing the jury in the charge that its verdict must be unanimous as to a single incident of the offense among those presented by the State. *Id.*

Here, the State presented three scenarios that would have permitted the jury to convict Ansari of the charged offense — the assault when the couple was alone in the car, the assault after the couple picked up Ms. Sharifi, and the assault after all three returned home. Ansari contends, and the State concedes, that given the State's evidence, the trial court erred when it denied Ansari's requested incident-unanimity instruction and that Ansari properly preserved the error in the trial

court. We agree. Because the trial court refused Ansari's requested instruction and overruled his objection, the trial court permitted the jury to convict Ansari if it found he committed any one of the three assaults for which the State produced evidence. This permitted the jury to convict Ansari on less than a unanimous verdict. *See id.* at 772–74.

### *Some Harm?*

Because the trial court erred and the error was properly preserved, we must now determine whether appellant suffered some harm because of the trial court's failure to instruct the jury properly as to the incident-unanimity requirement. *See Reeves*, 420 S.W.3d at 816; *Ngo*, 175 S.W.3d at 743; *Ochoa*, 119 S.W.3d at 828. In determining whether Ansari suffered some harm based on the charge error, we must look at: (1) the charge as a whole; (2) the arguments of counsel; (3) the state of the evidence, including contested issues and the weight of the probative evidence; and (4) other relevant information in the record. *Reeves*, 420 S.W.3d at 816; *Cosio*, 353 S.W.3d at 777. Although this is a less stringent standard than egregious harm, we still must find Ansari "suffered some actual, rather than merely theoretical, harm from the error." *Id.* (quoting *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)).

1. *Charge as a Whole*

Although the charge mentions unanimity twice —in the boilerplate language regarding the duties of the presiding juror — it never mentions incident-unanimity.[1] Rather, the charge as a whole merely instructs the jury that if it finds "beyond a reasonable doubt . . . the defendant, Aghil Ansari, did intentionally, knowingly, or recklessly cause bodily injury to Zahra Mahmoodi, by striking said complainant with the hand of the defendant or pushing said complainant with the

---

[1] "It is the presiding juror's duty to preside at deliberation, vote with you, and when you have *unanimously agreed* upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as presiding juror. . . . After you have reached a *unanimous verdict*, the presiding juror will thereto by filling in the appropriate form attached to this charge and sign his/her name as predicting juror." (emphasis added)

hand of the defendant, then you will find the defendant guilty." This permits the jury to do exactly what the court in *Francis* held it could not: merely agree a statute was violated. *See Francis*, 36 S.W.3d at 125.

During trial, the State presented evidence of three separate incidents of assault. However, the jury was never told it had to unanimously agree as to the actual, specific incident of assault committed by Ansari. Thus, we cannot know whether: (1) all jurors believed all three assaults occurred; (2) some jurors believed Ansari struck Ms. Mahmoodi when they were alone in the car, but other jurors did not; (3) some jurors believed Ansari struck Ms. Mahmoodi after they picked up her daughter, but others did not; or (4) if some jurors believed Ansari pushed Ms. Mahmoodi when she attempted to call 911, but others did not. The charge, without an incident-unanimity instruction, allowed the jurors to find Ansari guilty without agreeing on the particular assault they believed he committed. This factor weighs in favor of a finding of some harm.

### 2. *Closing Argument*

The prosecutor referenced two of the three alleged assaults in his closing argument:

> And I want to argue that there is injury if you look at these pictures. If you look at State's Exhibit No. 10. If you look closely, there is some swelling on her lip, and that is on the left side of her lip. And what did she tell you when she took the stand? *She told you that she was sitting in the passenger's seat of the car and he struck her with his right hand while he was driving.* And if he were to do that, where would he likely hit her? On the left side of her mouth. That's consistent. That's clear. And the evidence speaks for that. The evidence speaks for that.

> And then she told you about getting to the mall, finally getting Shideh. So they get there. Again, this woman is in fear. Do you really think she is going to tell everybody in the family, Oh, yeah, guess what? He just assaulted me. No. *Shideh gets in the car and then Zahra tells you that she's assaulted again in front of Shideh. And what did Shideh tell you? The exact same thing, that her mother was assaulted in front of her.*

(emphasis added)  The State emphasized two separate assaults.  This argument suggested to each individual juror the he or she could find Ansari guilty if he or she believed either assault occurred — without agreement.  Again, there is no way to know whether the jurors all believed one of the assaults occurred or whether some believed one occurred and some believed another occurred. Again, this weighs in favor of the existence of some harm.

### 3.  *The State of the Evidence*

The evidence presented by the State concerned three separate instances of assault, but Ansari was charged with only one count of assault and, as noted, there was no incident-unanimity instruction.  The State contends, however, the trial court's erroneous refusal to give the instruction requested by Ansari is harmless because the jurors were faced with an all-or-nothing decision about who to believe — Ms. Mahmoodi and Ms. Sharifi or Mr. Ansari.  Thus, according to the State, whether some jurors actually believed one particular assault occurred and others believed another occurred, there is no harm because clearly the jurors believed some sort of assault occurred.  This, however, is not the law according to *Cosio* — "the jury must agree upon a *single and discrete incident* that would constitute the commission of the offense alleged."  353 S.W.3d at 771 (quoting *Stuhler*, 218 S.W.3d at 717) (emphasis added).  It is not sufficient for the jury to simply believe Ansari violated the statute.  *See Francis*, 36 S.W.3d at 125.

Admittedly, in *Cosio*, the Court of Criminal Appeals determined Cosio was not harmed by the trial court's failure to give an incident-unanimity instruction.  353 S.W.3d at 777–78.  However, in *Cosio*, the court was required to use the egregious harm standard because Cosio failed to properly preserve the alleged charge error.  *Id.*  Moreover, in *Cosio*, the court noted the victim's testimony was not impeached and she detailed each of the four incidents set out in the jury charge — it was merely a case of the victim testifying the defendant committed numerous offenses and

the defendant denying he committed any. *Id.* at 777. In this case, however, Ms. Mahmoodi, the alleged victim, was impeached, as was the witness, Ms. Sharifi.

Ms. Mahmoodi testified at trial that when they were unable to locate her daughter at the mall where they believed she was, an argument ensued, resulting in Ansari "punching" her "with his fist" on her arm. She also stated Ansari struck her mouth with the back of his right hand, causing swelling and bleeding. According to Ms. Mahmoodi, after they were able to locate her daughter and pick her up, they headed home. Ms. Mahmoodi testified Ansari was angry and began calling her names. She specifically stated Ansari "started beating me" in front of Ms. Sharifi while they were in the car. Ms. Mahmoodi said that during this second assault, Ansari hit her in the mouth again and "hit my face to the window." When they arrived home, Ms. Mahmoodi stated she attempted to call 911, but Ansari grabbed her and started shaking her. Ms. Sharifi completed the call to 911.

Officer David Tavitas testified he was dispatched to the Ansari home where he spoke to Ms. Mahmoodi through Ms. Sharifi, who he stated spoke English and with whom he had no trouble communicating. Officer Tavitas stated he went inside the home and there was no obvious signs of a struggle. According to the officer, Ms. Mahmoodi claimed that while all three of them were in the car, Ansari struck or backhanded her. This was, according to the officer, the only assault reported to him. Ansari denied striking Ms. Mahmoodi, but according to Officer Tavitas, he admitted he pushed her when she was in the passenger seat of the car; later, the officer changed his testimony, stating Ansari admitted striking her once. At trial, Ansari denied pushing or striking Ms. Mahmoodi. As to Ms. Mahmoodi's injuries, Officer Tavitas testified the only injury he observed was a swollen upper lip.

The officer testified neither Ms. Mahmoodi nor Ms. Sharifi mentioned hair pulling or Ms. Mahmoodi's face being pushed into the car window. There was also no mention of Ansari trying

to prevent Ms. Mahmoodi from calling 911, which the officer admitted could have resulted in a separate offense, i.e., interference with an emergency telephone call.

Detective Joseph Combs also testified. He stated he spoke to Ms. Mahmoodi in English and she answered him — seeming to understand him. He said he provided Ms. Mahmoodi with a form known as a 2089, which is a form completed by victims. Detective Combs stated he did not complete the form; rather, he assumed Ms. Mahmoodi completed it, perhaps with the assistance of someone.

The 2089 form, which was signed by Ms. Mahmoodi, was admitted into evidence. The form, completed by Ms. Mahmoodi either alone or perhaps with Ms. Sharifi's assistance, states Ansari "started punching me in the face with a closed fist." The report said nothing about punches to the arms, Ansari backhanding her, her face being hit against the car window, or Ansari grabbing her violently and shaking her. This contradicts Ms. Mahmoodi's trial testimony in which she stated that Ansari "punched" her *arms* and slapped her with the back of his hand. When asked about the contradiction, Ms. Mahmoodi expressed surprise at what was in the report.

Detective Combs was also the officer who took pictures of Ms. Mahmoodi that evening. The only injury he recalled was to the left side of her mouth.

Ms. Sharifi testified that after Ansari and her mother picked her up at the mall, she saw Ansari "strongly hit" her "mom's mouth" and "push" her "mom's head to the window." On cross examination, she described the events that took place in the car as a "beating." Ms. Sharifi contradicted her mother's statement about the assault that occurred when they got home, claiming Ansari not only shook her mother, but slapped her as well. Ms. Mahmoodi never claimed Ansari slapped her after they returned home. Ms. Sharifi also claimed that when officers arrived at the house, she told them about all three of the assaults, specifically telling them that when her mother arrived at the mall, her lips were bleeding — this too contradicts the 2089 form apparently

completed — with or without assistance — and signed by Ms. Mahmoodi the night of the alleged assaults.  As noted above, the form describes a single assault involving punches to the face.

The photographs taken near the time of incident show only a bit of redness on the side of Ms. Mahmoodi's mouth and some slight swelling.  The photographs do not support Ms. Mahmoodi's testimony that she was beaten and punched, particularly the statement in the 2089 form signed by Ms. Mahmoodi, stating Ansari was punching her in the face with a closed fist. Sixteen color photographs of Ms. Mahmoodi, including close-ups of her face, were admitted into evidence by the State and the defense.  None of the photographs show the type of injuries one would expect based on Ms. Mahmoodi's and Ms. Sharifi's description of the attacks — a beating, punches to the face, and a face pushed against a car window.

The contradictions in the evidence between the only two witnesses and law enforcement, as well as the photographs — impeaching the testimony of the eyewitnesses — weigh in favor of a finding of some harm.

4.  *Other Relevant Factors*

The State also addressed all three assaults in its opening argument, setting the stage for the jury to consider three separate incidents:

> In the meanwhile, the complainant, Ms. Zahra Mahmoodi, was with the defendant. And they got in the car together and they went to go pick up Shideh, her daughter. And while in that car, there was an argument.  It was an argument, but then the law was broken.  And that happened when *Mr. Ansari decided to strike Ms. Mahmoodi in the face causing her bodily injury*.

> And we believe the evidence will show that Shideh was eventually picked up.  She observed her mother to have an injury and she was concerned.  *And after Shideh was picked up, she saw Mr. Ansari assault her mother again.*

> They eventually get back to Mr. Ansari's house. Police are called.  But before police get there, we believe the evidence will show that *he roughed up Ms. Mahmoodi again by grabbing her, pushing her.*

As noted above, the State continued with its three-assault theory by presenting evidence of all three assaults through the testimony of Ms. Mahmoodi and Ms. Sharifi. This factor, like the others, weighs in favor of a finding of some harm.

Moreover, during the charge conference, the State vigorously contested Ansari's request for an incident-unanimity instruction, arguing the jury charge mirrored the information and all three incidents occurred on the same day. The State advised the trial court that case law supported its contention that no unanimity instruction was necessary — after Ansari's counsel referred to the decision in *Cosio*. The State then went on to specifically object to Ansari's requested unanimity instruction, stating "you can't confine the jury to pinpoint the exact act . . . they are triers of the facts, Judge, and they are themselves the sole triers of the facts and they are able to determine — and that's the exact point of deliberations, Judge, jury deliberations." On appeal, the State concedes this was incorrect.

In *Cosio*, the court of criminal appeals found an absence of egregious harm. In doing so, it noted, among other things, that neither of the parties added to the charge errors — in that case, by telling the jury it did not have to be unanimous about the specific incident of criminal conduct. 353 S.W.3d at 377. In this case, although the State did not inform the jury it did not have to be specific, the State incorrectly advised the trial court about the existing law, resulting in the trial court denying Ansari's request for the incident-unanimity instruction to which he was clearly entitled. We hold this too weighs in favor of a finding of some harm.

All four of the harm factors discussed in *Reeves*, weigh in favor of a finding that Ansari suffered some harm in the absence of the requested incident-unanimity instruction — particularly the entirety of the evidence. *See Reeves*, 420 S.W.3d at 816; *Cosio*, 353 S.W.3d at 377–78. Moreover, the Texas Court of Criminal Appeals has repeatedly found the existence of *some harm* when the trial court failed to give a proper instruction on incident-unanimity when called for. *See,*

*e.g., Francis v. State*, 53 S.W.3d 685, 686–87 (Tex. Crim. App. 2002); *Pizzo v. State*, 235 S.W.3d 711 (Tex. Crim. App. 2007). This court has likewise found harm in the absence of such an instruction. *See In re M.P.*, 126 S.W.3d 228, 232 (Tex. App.—San Antonio 2003, no pet.).

In *M.P.*, a juvenile was accused of engaging in delinquent conduct by committing the offense of aggravated assault. *Id.* at 229. The juvenile offender was charged, in the disjunctive, with committing the offense in four separate ways. *Id.* at 229–30. Just as the State's petition contained four disjunctive allegations, the jury charge also contained four separate and distinct offenses charged in the disjunctive manner rather than charging a single offense committed in various ways. *Id.* Given the charge, the juvenile objected, and when the trial court refused his objection and found him delinquent, complained on appeal that the charge allowed a conviction on less than a unanimous verdict. *Id.* at 228, 230. After determining the trial court erred in refusing the juvenile's incident-unanimity instruction, we held the juvenile suffered some harm because when it was unclear whether the jury was unanimous in finding M.P. guilty of any one of the offenses set out in the charge. *Id.* at 231–32. The same is true in this case — given the charge, it is unclear whether the jury was unanimous in finding Ansari guilty of any one of the three offenses set out in the charge. Thus, he too suffered some harm.

Although the jury charge in the instant case instructed the jury that its verdict had to be unanimous, the jury question allowed the jury to render a verdict concerning Ansari's guilt in general without requiring a unanimous verdict concerning his guilt with regard to a specific incident of assault. Because the jury was permitted to return a less than unanimous verdict, we hold Ansari suffered some harm and reversal is required.

## CONCLUSION

Based on our analysis, we hold the trial court erred in refusing Ansari's properly requested instruction on incident unanimity. We further hold Ansari suffered some harm as a result of the

trial court's error, and therefore, this matter must be remanded for a new trial in accordance with this court's opinion. Given our decision, we need not address Ansari's remaining appellate issues as those issues would not entitle him to any greater relief. Accordingly, we reverse the trial court's judgment and remand this matter to the trial court for a new trial.

Marialyn Barnard, Justice

Publish