Fourth Court of Appeals
San Antonio, Texas



## MEMORANDUM OPINION

No. 04-22-00482-CR

Ralph **JIMENEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CR6404
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Beth Watkins, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: November 29, 2023

AFFIRMED

A jury found appellant, Ralph Jimenez, guilty of two counts of aggravated sexual assault

of a child and assessed punishment at life in prison.[1] In three issues that we consolidate into two,

Jimenez complains about a jury instruction and the imposition of a life sentence. We affirm.[2]

---

[1] The reporter's record on appeal indicates the trial court imposed his sentence. However, the judgment indicates the jury assessed punishment.

[2] Because Jimenez does not challenge the sufficiency of the evidence, we recite the factual background only as relevant to the issues raised on appeal.

**JURY CHARGE ERROR**

On appeal, Jimenez asserts the trial court erroneously submitted an instruction in the charge of the court. The charge contained, over Jimenez's objection, the following instruction:

> You are instructed that if there is any testimony before you in this case regarding evidence of a separate offense of sexual assault of a child committed by the defendant against a child who is not the complainant in this case, and if you find and believe beyond a reasonable doubt that the defendant committed such other offense, if any was committed, you may consider the same in determining what bearing such evidence has, if it does, on relevant matters in this case, including the character of the defendant and acts performed in conformity with the character of the defendant.

A trial court must "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [its] charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. art. 36.14. In reviewing alleged charge error, we determine whether error existed in the charge, and if so, whether harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *see Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015) (same).

Jimenez contends the instruction was erroneous because the jury heard no evidence of acts of sexual assault on a child other than the complainant. The State asserts a portion of the 9-1-1 call made by the complainant's biological mother, M.P., supports the instruction.

During the guilt-innocence phase, M.P. testified that on the evening of May 3, 2021, she found Jimenez in her daughter's bedroom with his hand in the child's pants. She immediately called 9-1-1. During the 9-1-1 call, M.P. can be heard yelling at Jimenez, at one point telling him, "I knew something was wrong."

The State contends this sentence was then followed by M.P. telling Jimenez, "You will never [deleted] change." The State suggests this sentence indicated to the jury that Jimenez may

have committed other offenses similar to the one for which he was being tried, thus warranting the instruction. However, during the admitted recording of the 9-1-1 call that is contained in the appellate record, M.P. cannot be heard telling Jimenez he "will never . . . change."[3] Therefore, on this record, we will assume the trial court erred by instructing the jury as it did. Accordingly, we next consider whether Jimenez was harmed.

The degree of harm required to obtain a reversal depends on whether the error was preserved. *Ngo*, 175 S.W.3d at 743; *Ansari v. State*, 511 S.W.3d 262, 265 (Tex. App.—San Antonio 2015, no pet.). When, as here, the defendant objected to the complained-of portion of the charge, then he need only prove he suffered "some harm" as a result of the jury charge error. *Ngo*, 175 S.W.3d at 743; *Ansari*, 511 S.W.3d at 265. "'Some harm' means actual harm and not merely a theoretical complaint." *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022). In determining whether Jimenez suffered some harm based on the charge error, we consider: (1) the charge as a whole; (2) the arguments of counsel; (3) the state of the evidence, including contested issues and the weight of the probative evidence; and (4) other relevant information in the record. *Id.*

## A. The Entire Jury Charge

"Abstract paragraphs 'serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge,' and application paragraphs apply the 'pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations.'" *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App.

---

[3] When the State offered the recording of the 9-1-1 call into evidence, defense counsel did not object to the call itself, but, instead, stated "there may be some stuff that we have to redact before it's played for the jury." The prosecutor responded, "[M.P.] does call him a sex offender twice, but a – it's almost referring to the fact that he just abused her daughter. So I don't know that it alludes to any history." Defense counsel asked for a redaction on the grounds that a portion of the call was prejudicial. It is not clear what portion(s) of the recording defense counsel wanted redacted. The court overruled the objection.

2012). "It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Id.* Here, the abstract portion of the charge defined the elements of aggravated sexual assault of a child and set forth the applicable definitions. The charge then stated the two counts and various legal principals and instructions, including the instruction about which Jimenez complains on appeal.

The application paragraphs applicable to both counts instructed the jury that if it found "from the evidence beyond a reasonable doubt that on or about the 3rd day of May, 2021, in Bexar County, Texas, [Jimenez] did intentionally or knowingly cause [the applicable element of penetration or contact with the child] then you will find [Jimenez] guilty of aggravated sexual assault of a child as charged in" the indictment. We conclude the application paragraphs "helped to ameliorate any error within" the complained-of instruction because they "clearly directed the jury to the appropriate" elements of the offenses as alleged in the indictment. *See Campbell*, 664 S.W.3d at 248.

## B.     The State of the Evidence

The second factor "calls for consideration of the entirety of the trial evidence, including the contested issues and the weight of the probative evidence." *Campbell*, 664 S.W.3d at 248. On appeal, Jimenez contends there was only the complainant's "ambiguous testimony regarding 'in' and 'front private part' and 'where I go pee.'" According to Jimenez, although this testimony coupled with the outcry statement to Officer Anderson and the statements to the SANE examiner could suffice to satisfy a legal sufficiency standard, "that does not foreclose the issue of whether the jury was influenced by a jury instruction hinting at hypothetical incidents of sexual assault against other victims."

The ten-year-old complainant, S.G., testified she currently lives with her adoptive family. She has two siblings who live with M.P. S.G. stated that she was spending the weekend at M.P.'s

two-bedroom apartment where she slept on a cot in a bedroom with her siblings. While she was sleeping, Jimenez came into the bedroom and touched her under her clothes with his fingers "in an inappropriate place," in her front "private parts," which she used to "go pee." She said her other private part was her "bottom." She said Jimenez also touched her "front part" with his tongue. While Jimenez was touching S.G., M.P. came into the bedroom. When the police came, S.G. told them what happened and then she went to the hospital. S.G. stated this was not the first time Jimenez did this to her, but she never told anyone about the other times.

M.P. testified she walked into the bedroom and saw S.G. on the cot and Jimenez standing over her. M.P. explained she had cameras in her apartment and she checked the camera in the children's room on her phone. A video of that camera feed showed Jimenez enter the bedroom and try to unplug the camera. When M.P. realized the camera in the children's bedroom was turned off, she went to the bedroom and saw Jimenez with his hand in S.G.'s pants. M.P. immediately called 9-1-1. When confronted by M.P., Jimenez ran away. He was later found in Pecos, Texas, which is "very far away" from San Antonio.

The outcry witness, San Antonio Police Officer Rhiannon Anderson, testified that on May 3, 2021, she was the first officer to respond to a sexual assault of a child call. Anderson stated S.G. told her the following, which was also recorded on Anderson's body camera and played for the jury:

> . . . [Jimenez] entered her room and tried to spread her legs apart and that she wouldn't – she wouldn't let him. He left the room. That he came back a short time later, forced her legs apart. She told me that he touched her vagina with his finger. I asked if he touched her vagina with anything else. She said his tongue. Then I asked her if he put anything inside of her. She said his finger. She said his finger and his tongue.

Anderson said S.G. was "very clear," they "went over it three times," and "each time it was the same and each time she was very clear, very adamant."

Julie Vorine, the sexual assault nurse examiner who examined S.G., testified that based on the child's outward appearance, she showed no signs of trauma consistent with sexual abuse. However, S.G. told her that Jimenez "tried to touch my front part, but then he got away." When asked the location of her "front part," S.G. pointed to her vaginal area. When asked how Jimenez tried to touch her, S.G. responded, he "was opening my legs and he looked inside of there and he put his hand in there. In my front part." S.G. also told Vorine that Jimenez licked her with his tongue.

We conclude that, based on the weight of the probative evidence, this factor weighs against a harm determination.

## C.      Arguments of Counsel

Under the third factor, we consider the arguments of counsel. During closing arguments, the State and defense counsel focused on the evidence adduced at trial. Neither side mentioned or alluded to another child. "Therefore, the jury arguments undoubtedly helped to remedy the alleged error in the charge." *Campbell*, 664 S.W.3d at 253 ("Thus, the State never argued that Appellant could be convicted based solely on his intent to engage in the conduct. Instead, the jury arguments focused on whether Appellant intended the result—i.e., causing Jade serious bodily injury or death."); *see also French v. State*, 563 S.W.3d 228, 238 (Tex. Crim. App. 2018) (noting State's closing argument focused jury's attention such that the charge error was harmless); *Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (noting, "we have determined that jury arguments bear significantly on an *Almanza* analysis"). We conclude this factor weighs against a harm finding.

**D.      Other Relevant Information**

Under the last factor, we consider any other relevant information as revealed by the record as a whole. Having reviewed the record, we find no other relevant information that warrants consideration.

**E.      The Factors Together**

Assuming the jury charge provided an erroneous instruction, we conclude, on this record and after considering all the factors, that any harm to Jimenez as a result of the error was merely theoretical and not actual.

LIFE SENTENCE

Jimenez raises two challenges to his sentence. First, he asserts mandatory life sentences are unconstitutional. Second, he asserts the trial court erred by imposing a mandatory life sentence without making express findings of fact regarding prior convictions.

**A.      Constitutionality of Life Sentence**

Jimenez was sentenced to life pursuant to Texas Penal Code section 12.42(c)(4). On appeal, he contends the statute violates his right to due process and the prohibition against cruel and unusual punishment.

**1. Cruel and unusual punishment**

As a general rule, sentences that fall within the statutory limits are not considered excessive under the Eighth Amendment. *Reynolds v. State*, 430 S.W.3d 467, 471 (Tex. App.—San Antonio 2014, no pet.). "However, there is an exception to the rule that sentences within the range of punishment are not excessive in violation of the Eighth Amendment, and that is when the sentences are grossly disproportionate to the offenses for which the defendant has been convicted." *Id.*

Jimenez does not dispute that he was sentenced within the statutory range of punishment. Instead, he contends, with no authoritative support or elaboration, that sentences should be

proportional to the offenses committed, mandatory life sentences prevent the trier of fact from considering the gravity of the conduct and the circumstances surrounding it, and the Legislature "has overreached by drawing an overly broad definition of sexually violent offense[s] and mandating life sentences for repeat offenders." He concedes current case law does not support his argument, and we agree.

The United States Supreme Court's holding in *Harmelin v. Michigan*, 501 U.S. 957, 994–96 (1991), provides that the imposition of a mandatory sentence of life in prison without the possibility of parole does not violate the Eighth Amendment's protection against cruel and unusual punishment. "Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Id.* at 994–95. "There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'" *Id.* at 995.

It is unclear from Jimenez's brief whether he also contends his sentence is grossly disproportionate to the offenses for which he was convicted. His only argument before the trial court was that because the statute removed a trial court's discretion to impose anything other than an automatic life sentence based upon prior convictions the statute was unconstitutional, constituted cruel and unusual punishment, and violated due process. Jimenez asked the court to set "aside the long Chapter 12 [sentence] and assess a punishment that the Court feels is reasonable, not constrained by what the law necessarily says in this matter." "[A]n assertion that a sentence is grossly disproportional such that it constitutes cruel and unusual punishment is waived for purposes of appellate review if no objection on that ground is made in the trial court or raised in a motion for new trial." *Pena v. State*, No. 04-18-00491-CR, 2019 WL 2996964, at *2 (Tex. App.—San Antonio July 10, 2019, no pet.) (mem. op., not designated for publication). Jimenez did not

raise this complaint before the trial court; therefore, any argument that his sentence constitutes cruel and unusual punishment because it was disproportionate is waived.

### 2. Due process

On appeal, Jimenez contends, "Texas removes all sentencing discretion upon a finding of prior convictions for violent sexual offenses." He asserts with only citations to Texas Penal Code section 12.42(c)(4)(A)[4] and Texas Code of Criminal Procedure article 62.001(6)(A),[5] that he has the due process right to present evidence in mitigation of punishment and a sentencing scheme that denies him this right is unconstitutional. However, Texas courts have held that the Eighth Amendment does not guarantee that adult defendants receive a mitigation hearing when given a sentence of life, with the possibility of parole. *See, e.g.*, *Turner v. State*, 443 S.W.3d 128, 129 (Tex. Crim. App. 2014) ("[C]ontrary to appellant's argument, he is not entitled to an individualized sentencing hearing. He is only entitled to have his sentence reformed from life without parole to life with the possibility of parole.").

Jimenez provides no additional authoritative support for his contentions on appeal. An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Jimenez's brief fails to comply with requirements on this issue.

---

[4] "Notwithstanding Subdivision (1) or (2), and except as provided by Subdivision (3) for the trial of an offense under Section 22.021 as described by that subdivision, *a defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life without parole* if it is shown on the trial of an offense under Section 20A.03 or of a sexually violent offense, committed by the defendant on or after the defendant's 18th birthday, that the defendant has previously been finally convicted of . . . an offense under Section 20A.03 or of a sexually violent offense . . . ." TEX. PENAL CODE § 12.42(c)(4)(A) (emphasis added).

[5] The definition of "sexually violent offense," "committed by a person 17 years of age or older," includes continuous sexual abuse of young child or disabled individual, indecency with a child, sexual assault, or aggravated sexual assault. TEX. CODE CRIM. PROC. art. 62.001(6)(A).

**B.      Findings of Fact**

Relying on Penal Code section 12.42(c)(4), Jimenez asserts the trial court failed to make a finding of true to the enhancements (his prior convictions). He did not raise this complaint before the trial court; therefore, it is waived.[6] *See Garner v. State*, 858 S.W.2d 656, 659 (Tex. App.—Fort Worth 1993, pet. ref'd) (appellant's complaint that trial court erred by not orally reading two enhancement paragraphs or making an oral finding thereon during second trial in which he waived his right to a jury was waived because he failed to object).

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

Lori I. Valenzuela, Justice

DO NOT PUBLISH

---

[6] During the sentencing hearing, the trial court admitted into evidence two State exhibits showing Jimenez's prior convictions. Defense counsel affirmatively stated, "no objection."