

## NUMBER 13-13-00541-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

GRACIELA CASAS ARJONA,                                            Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 93rd District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Longoria
### Memorandum Opinion by Justice Benavides

The State indicted appellant, Graciela Casas Arjona, with two counts of capital murder related to the death of Reyes Garcia.   *See* TEX. PENAL CODE ANN. 19.03 (West, Westlaw through 2015 R.S.).   Arjona pleaded not guilty, but a Hidalgo County jury found her guilty of both counts, and the trial court sentenced her to life imprisonment without

parole. *See id.* § 12.31. On appeal, Arjona asserts by three issues that: (1) the evidence is legally insufficient to support the verdict and judgment; (2) the trial court reversibly erred by failing to instruct the jury that a unanimous verdict was required regarding the alternative paragraphs in count one of the indictment; and (3) Arjona's trial counsel was ineffective for failing to request a unanimity instruction in the jury charge. We affirm.

## I.  BACKGROUND

On June 23, 2010, masked intruders entered Reyes Garcia's Mission, Texas home, subdued him, and stole several of his personal firearms. While Garcia lay on the floor of his home at the mercy of the intruders, the assailants shot him eight times, killing him. Also present in the home during the ordeal were: (1) Garcia's wife, Vanessa; (2) Garcia and Vanessa's children; (3) Arjona, who is Vanessa's sister; and (4) Arjona's boyfriend, Roel Cantu. Other than Garcia, however, no one else suffered any injury.

Mission police investigated the murder by speaking to Cantu, who initially provided false information to them, but later changed his story and identified Tony Mendez and Jeffrey "El Dragon" Juarez as the suspects in Garcia's murder. Using this information, police obtained cell phone data from Cantu's, Mendez's, and Juarez's respective phones. Mission Police Lieutenant Jody Tittle testified that the cell phone data records indicated that Cantu called Mendez prior to the murder and then Mendez called Juarez. Cantu and Mendez knew each other from prison and lived together along with Arjona. Using the cell phone data, police tracked Juarez's phone to the Mission area around the time of the murder. Police later arrested Juarez for Garcia's murder. Mendez, however, has yet to be located by police.

2

The police shifted their investigation to Arjona to determine whether she played a role in Garcia's murder. On the day following Garcia's murder, Arjona provided a short statement to police, which simply described the events that she observed while at the Garcia home on the night of the murder. Following Juarez's arrest, however, Arjona identified Mendez and Juarez in a police photo lineup. On April 4, 2011, Mission police, led by Investigator Dina Valdez, again met with Arjona to determine whether she had any more details regarding Garcia's murder. Investigator Valdez testified that when she and the other investigators showed up at Arjona's home, Arjona "seemed a bit surprised, but she also seemed like at some point she was expecting us." After police read Arjona her *Miranda*[1] rights, Arjona provided a more detailed statement than her first, in which she stated that Vanessa offered Cantu $10,000 to kill Garcia because Garcia physically abused Vanessa. In her April 4, 2011, statement, however, Arjona denied any direct involvement in Garcia's murder.

Two days later, police placed Arjona under arrest for Garcia's murder and obtained another statement from her. In that statement, Arjona stated that Vanessa told her that she wanted Garcia dead because he physically and verbally abused her, and "treated her like a servant." Vanessa also told Arjona that "she had had enough" of Garcia and asked for Arjona's help to "get rid of" Garcia—whether he is dead, in jail, or "beat up." Arjona admitted that Vanessa told her and Cantu that "she would pay $10,000 . . . to us or to find someone to kill Reyes." Arjona then stated that while she and Cantu were living with Mendez, she and Cantu told Mendez about Vanessa and Garcia, and about all of the

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

3

guns and money that Garcia kept in the house. Arjona admitted that she "told [Mendez] that Vanessa was looking for someone to kill her husband [and] that she was willing to pay for it." At that point, Mendez told Arjona and Cantu that his cousin, Juarez, was a "killer" and "had gotten away with a lot of killings." Mendez then told Arjona and Cantu that he was going to call Juarez and discuss robbing Garcia. Juarez eventually arrived at Mendez's apartment on June 23, 2010, where Juarez, Mendez, and Cantu discussed how they would enter Garcia's home and rob him. Arjona asserted, however, that she did not participate in those discussions, but heard everything because she was "in the kitchen the whole time." Later that evening, Vanessa invited Arjona and Cantu over to Garcia's house to eat soup. According to her statement, "Vanessa knew that we were going to her house with the intention of robbing her and [Garcia], but she just did not know when." Arjona then described the events that transpired that evening leading up to Garcia's murder, but stated that she did not know that the assailants were going to kill Garcia.

At trial, Arjona denied or could not remember certain portions of her statements to police, including those statements which implicated her in the crime. Arjona testified that she believed that Cantu was involved in Garcia's murder, but not Vanessa.

The jury found Arjona guilty on both counts of capital murder. At sentencing, the State dismissed her conviction under the second count, and the trial court sentenced Arjona to life imprisonment without parole on the first count. *See id.* This appeal followed.

## II. SUFFICIENCY CHALLENGE

By her first issue, Arjona asserts that the evidence is insufficient to convict her of

4

capital murder.

## A.    Standard of Review

In reviewing sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.    *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).    In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony.    *Brooks*, 323 S.W.3d at 899.    It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilt is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768.

The elements of the offense are measured as defined by a hypothetically correct jury charge.    *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).    Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*    Under a hypothetically correct jury charge in this case, Arjona is guilty of capital murder if she intentionally caused Garcia's death in the course of committing or

5

attempting to commit a burglary or robbery. *See* TEX. PENAL CODE ANN. 19.03. A person commits the offense of robbery if, in the course of committing theft and with intent to obtain property, he intentionally or knowingly causes bodily injury to another. *See id.* § 29.02(a) (West, Westlaw through 2015 R.S.). A person commits the offense of burglary of a building if, without the effective consent of the owner, the person enters a habitation with the intent to commit a felony, theft or an assault. *See id.* § 30.02(a)(3) (West, Westlaw through 2015 R.S.).

The trial court's charge in this case allowed the jury to convict Arjona under "the law of parties," or as a co-conspirator. *See id.* § 7.02 (West, Westlaw through 2015 R.S.). Under the law of parties theory of liability, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). Under the co-conspirator theory of liability, if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *See* TEX. PENAL CODE ANN. § 7.02(b).

**B.      Discussion**

By Arjona's April 6, 2011 written statement to police, she admitted that Vanessa told her and Cantu that Vanessa wanted Garcia dead and was willing to pay $10,000 for it.   Arjona also admitted that she and Cantu lived with Mendez in his Mission apartment, where she and Cantu "told [Mendez] about Vanessa and [Garcia]" including about the guns and money that Garcia kept in his house.   Arjona then admitted that she told Mendez "that Vanessa was looking for someone to kill her husband and that she was willing to pay for it."   At that point, Mendez reached out to Juarez, who met with Mendez and Cantu to develop the plan to rob Garcia of his money and guns.   Arjona's statement also stated that she and Cantu "knew that day that the robbery was going to take place."

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found Arjona guilty under the law of parties and as a co-conspirator for capital murder. Without Arjona's solicitation, encouragement, and aid, Mendez would not have known about Garcia's money and gun collection, or that Vanessa purportedly wanted Garcia dead.   Furthermore, we disagree with Arjona's argument that she could not have anticipated Garcia's murder as a result of the robbery.   Juarez was a member of a notorious street gang who, Arjona had been told, was a "killer" and had killed before without being caught by the law.   Finally, although Arjona denied making some of her statements to police, specifically those implicating her in Garcia's murder, we defer to the jury's credibility and weight determinations given to this testimony because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony.   *See Brooks*, 323 S.W.3d at 899.   Arjona's first issue is overruled.

7

### III. UNANIMITY INSTRUCTION IN THE JURY CHARGE

By her second issue, Arjona argues that the trial court reversibly erred when it failed to include an instruction requiring a unanimous verdict as to the alternative paragraphs in count one.

#### A. Standard of Review

Our first duty in analyzing a jury-charge issue is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we then analyze that error for harm. *Id.* Preservation of charge error does not become an issue until we assess harm. *Id.* (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).

In assessing harm, we first examine whether the defendant objected to the erroneous charge. *Id.* As in this case, if the defendant did not object, "then he must show that the error was 'fundamental' and that he suffered 'egregious harm.'" *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). The appellant must show "actual, rather than theoretical, harm." *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Some examples of egregious harm include those errors that "affect the very basis of the case . . . [or] deprive the defendant of a valuable right, or vitally affect a defensive theory." *Id.* (internal quotations and citation omitted). This particular standard is a "high and difficult standard which must be borne out by the trial record." *Reeves*, 420 S.W.3d at 816.

**B.      Discussion**

Arjona argues that the trial court failed to provide the jury with a unanimity instruction as to which theory of liability it found Arjona guilty under—that is, whether Arjona was guilty of capital murder under the law of parties or as a conspirator.   The Texas Court of Criminal Appeals has specifically addressed Arjona's argument and has held that a trial court's failure to instruct the jury to achieve unanimity with respect to whether an accused was guilty of capital murder as a principal actor or as a party, or with respect to any particular statutory alternative by which he might be found liable as a party, is not error because these theories are not penal provisions that define the offense of capital murder or identify the elements or gravamen of the offense.   *Leza v. State*, 351 S.W.3d 344, 357–58 (Tex. Crim. App. 2011) (internal citations omitted).   Instead, the court of criminal appeals likened these theories of liability to "adverbial phrases defining *not* the prohibited conduct that comprises capital murder (or any other criminal offense, for that matter), but conditions by which an accused may be deemed criminally responsible for the conduct of another that satisfies the elements or gravamen of capital murder (or any other criminal offense)."   *Id.* at 357 (emphasis in original).   Stated another way, they "describe alternative manners by which an accused may be held accountable for the conduct of another who has committed the constituent elements of a criminal offense, but they in no way define the offense itself."   *Id.*   Because we conclude that there was no error in the jury charge, we overrule Arjona's second issue.

### IV.      INEFFECTIVE ASSISTANCE OF COUNSEL

By her final issue, Arjona argues that her trial counsel was ineffective by failing to request a unanimity instruction in the jury charge.

**A.    Standard of Review**

To evaluate a claim of ineffective assistance of counsel, we utilize the two-prong *Strickland* test.    *See Strickland v. Washington,* 466 U.S. 668, 687 (1984).    Under this test, a defendant must first show that counsel's performance was deficient—that is, it fell below an objective standard of reasonableness.    *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).    Second, if the defendant shows deficient assistance, she must affirmatively prove prejudice—that is, it is reasonably probable that but for counsel's unprofessional errors, the result of the proceeding would have been different.    *Id.*

**B.    Discussion**

The essential basis of Arjona's ineffective assistance claim relates to her second issue regarding her counsel's failure to request a unanimity instruction in the jury charge. Because we held that the trial court did not err in failing to including the unanimity instruction in the charge, *see Leza*, 351 S.W.3d at 357–58, Arjona's counsel was not ineffective for failing to request such an instruction.    As a result, Arjona failed to meet the first prong of *Strickland* to show that her counsel's performance was deficient.    Arjona's third issue is overruled.

**V.    CONCLUSION**

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
1st day of October, 2015.

10