**Affirmed and Memorandum Opinion filed April 9, 2020**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00354-CR

**ELEDIS FERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Cause No. 1549057**

## MEMORANDUM  OPINION

A jury convicted appellant Eledis Fernandez of capital murder and the trial court sentenced him to serve life in prison without parole.  Appellant challenges his conviction in two issues.  In his first issue, appellant argues that he was deprived of his right to a unanimous verdict on a specific offense because the trial court instructed the jury that it could find him guilty of capital murder based upon either (1) an allegation of non-capital murder, or (2) an allegation of capital murder with the predicate offense of robbery.  We overrule this issue because the trial

court committed no error when it disjunctively charged the jury on two methods of committing the single offense of capital murder. Appellant argues in his second issue that the trial court erred because the conspiracy charge improperly instructed the jury that it could convict him of capital murder based on burglary of a building without proof of a specific burglary complainant. We overrule this issue because the jury charge, when viewed as a whole, did not eliminate the requirement that the State prove a specific burglary complainant. Having overruled both of appellant's issues, we affirm appellant's conviction.

## BACKGROUND

The complainant, Ambrosio Osorio Gonzalez, lived in a house with Denelio Duarte, Maricruz Ledesma, Karen Ledesma, and Carlos Arzate. Duarte and the complainant kept and sold illegal drugs in the house. The Ledesmas and Arzate, who had lived in the house only a short time, were unaware of Duarte's and the complainant's illegal activities. The complainant, Duarte, and the Ledesmas went out to a bar the evening of August 14, 2015. Arzate remained at the house because he had to leave for work early the next morning.

Earlier in August, appellant and Marco "Teclas" Olivares-Calderon had recruited Angel Lagos, Edwin "Mariposa" Olivares-Calderon, Pedro Mejia, and Jose Villa to join them in a plan "to take some drugs and money" from "a drug trafficker." On August 14, using a previously-installed GPS tracking device, appellant, Mariposa, and Teclas tracked the location of Duarte's car. As a result, they knew when the house's residents were on their way back to the house. Appellant and his comrades travelled to the house where they waited out of sight for the residents to return. Lagos testified at trial that they waited for the residents to return because they needed one of the residents to locate the drugs and money inside the house. All of the assailants had firearms.

2

When the house's residents returned home, the complainant got out of the car and went into the house. Duarte and the Ledesmas followed behind. As the residents approached the front door of the house, appellant, Teclas, Mejia, and Lagos emerged from the darkness to ambush them. Lagos testified that, as they moved to ambush the residents, he heard a male voice yell out "run," and "bring the piece." Duarte and one of the Ledesmas tried to hold the door closed, but the assailants forced their way into the house. As the assailants entered the residence, Duarte fell to the floor, the complainant moved into his bedroom, Karen Ledesma ran to the hallway bathroom where she hid in the bathtub, and Maricruz Ledesma fled to her bedroom.

As appellant crashed into the house, he grabbed Duarte off the floor, hit him in the face with the butt of his pistol, and forced him into the living room. Appellant then struck Duarte a second time with the pistol causing Duarte to fall to the floor again. Appellant then held Duarte on the floor at gunpoint. Awakened by screaming, Arzate opened his bedroom door where he was immediately confronted by one of the assailants. That assailant pointed a gun at Arzate and ordered him to get on the ground. Arzate complied.

At this point, the complainant emerged from his bedroom with a gun and began firing, striking Mejia in the stomach. The complainant was then shot. It is unclear which assailant initially shot the complainant. According to Lagos, Mejia returned fire at the complainant. Arzate testified that the assailant who had entered his bedroom fired two or three shots at the complainant. Finally, Duarte testified that the assailant holding him down fired and shot the complainant. Both the complainant and Mejia fell to the floor. Lagos, who had started to run when he saw the complainant come out with a gun, helped Mejia flee the house. Teclas stood over the complainant and shot him two or three more times. Teclas and

3

appellant then fled the residence without demanding or taking anything.

After the assailants fled, Duarte realized that he had been shot in his foot. Duarte, Arzate, and the Ledesmas attempted to help the complainant, who was lying on the floor with multiple gunshot wounds. The complainant and Duarte were transported to the hospital, where the complainant was pronounced dead. Mariposa, who had remained outside the house in his vehicle, picked up Lagos and Mejia and drove to a nearby urgent care center. They dropped Mejia off and then fled. Mejia was later transferred to the same hospital where the complainant and Duarte had been taken.

After a lengthy investigation, police identified and arrested the assailants. Appellant was charged with capital murder with the predicate offense being either "burglary of a building" of the complainant, or robbery of the complainant. Appellant's trial lasted several days and at the conclusion of the evidence, the jury found appellant guilty of capital murder. The trial court then sentenced appellant to life in prison without the possibility of parole. This appeal followed soon thereafter.

ANALYSIS

In both of his issues on appeal appellant argues that the trial court committed error in the jury charge. We therefore begin by setting out the standard of review and the law applicable to appellant's issues. We then turn to address appellant's issues.

## I.    Standard of review and applicable law

In a criminal case, we review complaints of jury charge error in two steps. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). First, we determine whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim.

App. 2005). Second, we review the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *Id.* at 743–44.

If a jury charge is erroneous, the harm analysis hinges upon whether a defendant objected to the charge. *See Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see also Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006). If a defendant objected to the erroneous jury charge, reversal is required if we find "some harm" to his rights. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). When charge error is not preserved, reversal is not required unless the resulting harm is egregious. *Id.*; *see also* Tex. Code Crim. Proc. art. 36.19.

Charge error is egregiously harmful when it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez v. State*, 209 S.W.3d 117, 125 (Tex. Crim. App. 2006). That is, the error must have been so harmful that the defendant was effectively denied a fair and impartial trial. *Almanza*, 686 S.W.2d at 172. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Under *Almanza*, the record must show that the charge error caused the defendant actual, rather than merely theoretical, harm. *Ngo*, 175 S.W.3d at 750. Neither party has the burden to show harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

The trial court's charge must fully instruct the jury on the law applicable to the case and apply that law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); *see* Tex. Code Crim. Proc. art. 36.14. "Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). The

5

application paragraph applies the relevant law, the definitions found in the abstract portion of the charge, and general legal principles to the particular facts of the case. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (citing *Gray*, 152 S.W.3d at 127–28). Because the application paragraph specifies "the factual circumstances under which the jury should convict or acquit, it is the 'heart and soul' of the jury charge." *Id.* at 367 (citing *Gray*, 152 S.W.3d at 128). "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion." *Reeves*, 420 S.W.3d at 818 (citing *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)).

In criminal cases, the jury must find every constituent element of the charged offense. *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). The jury is not necessarily required, however, to find that the defendant committed the charged offense in one specific way or even with one specific act. *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008). In determining the elements on which a jury must agree, courts should look to the penal statute. *Id.* at 536.

A person commits murder if he intentionally or knowingly causes the death of an individual. Tex. Penal Code § 19.02(b)(1). A person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit a felony—in this case, robbery or burglary. Tex. Penal Code §§ 19.02(b)(1), 19.03(a)(2). A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another, or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02(a)(1)-(2). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. Tex. Penal Code § 31.03. Appropriation of property is unlawful if it is without the

6

owner's effective consent. *Id.* § 31.03(b)(1). A person commits burglary if, without the effective consent of the owner, he enters a building with the intent to commit a felony, theft, or assault; or if, without the effective consent of the owner, he enters a building and commits or attempts to commit a felony, theft, or an assault. Tex. Penal Code § 30.02(a). An owner is a person who has possession of a property or a greater right to possession of a property than the actor. *Id.* § 1.07(a)(35)(A).

A person may be guilty as a party to capital murder if the defendant committed the offense by his own conduct or by the conduct of another for which he is criminally responsible. Tex. Penal Code § 7.01(a); *see Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). Under section 7.02(a)(2), a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Penal Code § 7.02(a)(2). Additionally, if in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *Id.* § 7.02(b).

## II. The trial court committed no error when it instructed the jury that "burglary of a building" may constitute an aggravating offense for purposes of capital murder.

The State charged appellant with capital murder based on two theories. In the first paragraph of the indictment, the State alleged appellant intentionally caused the death of the complainant while in the course of committing and attempting to commit the offense of "burglary of a building." In the second

7

paragraph of the indictment, the State alleged appellant intentionally caused the death of the complainant while in the course of committing and attempting to commit the offense of robbery.

The jury charge instructed the jury that it could convict appellant of capital murder based on either of the aggravating offenses, "burglary of a building" or robbery. The jury charge also permitted the jury to convict appellant as a principal actor, as a party under an "intent to promote or assist" theory of liability, or as a party under a conspiracy theory of liability. While the jury charge required the jury to be unanimous in its verdict regarding the offense committed, capital murder, it did not require the jury to be unanimous in the alternative aggravating offenses, or the alternative theories of liability. *See Leza v State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011) ("Where, as is the case here, the evidence is compelling that an accused is guilty of every constituent element of the alleged penal offense—*either* as a principal actor *or* under some theory of party liability—but there remains evidentiary play with respect to his precise role in that offense, we think it would be plainly absurd to require the jury to acquit the accused unless it can unanimously determine his status as a principal actor or a party and, if the latter, what his exact party accountability might be."); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) ("It is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted.")

In his first issue, appellant makes a multi-stepped argument that he was denied a unanimous verdict because the jury charge erroneously instructed the jury on the aggravating offenses for capital murder. Appellant begins by asserting that his indictment for capital murder was defective because the first paragraph alleged

8

the aggravating offense was "burglary of a building."[1]  In appellant's view this is not one of the aggravating offenses supporting a capital murder charge because the capital murder statute specifically lists "burglary," not "burglary of a building." Appellant then argues that, as a result of this word choice, the first paragraph of his indictment failed to allege the necessary elements of capital murder and instead alleged only the lesser-included offense of murder.  Next, appellant points out that since the trial court provided a disjunctive jury charge based on the indictment, "it instructed the jury that guilt need only be established through either of the charging paragraphs and that the jurors need not be unanimous in determining which paragraph had been proven."  Appellant then asserts that, as a result of the trial court's erroneous jury charge instruction, his right to a unanimous verdict on a specific offense was violated because the jury could have convicted him of capital murder upon an allegation of non-capital murder.

We conclude the trial court committed no error in its charge to the jury because the charge accurately instructed the jury on the law applicable to the case. *Gray*, 152 S.W.3d at 127.  Even though the charge identified one of the underlying offenses as "burglary of a building" rather than simply "burglary," it defined the offense by tracking the exact language found in the Penal Code's definition of "burglary."  The trial court specifically instructed the jury that "a person commits

---

[1] To the extent appellant is attempting to challenge his indictment as defective for the first time in this appeal based on its use of the term "burglary of a building," we conclude that he has failed to preserve any argument he may have had by failing to challenge it at the appropriate time in the trial court.  *See* Tex. Code Crim. Proc. art.  1.14(b) ("If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment . . . before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.").  Even if the argument was preserved, the indictment was not defective because it provided appellant with fair notice of the offense with which he was charged, enabling him to prepare his defense.  *See Nix v. State*, 401 S.W.3d 656, 661–62 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

burglary of a building if, without the effective consent of the owner, he: (1) enters a building, or any portion of a building, not then open to the public, with the intent to commit a felony, theft, or an assault; or (2) remains concealed, with the intent to commit a felony, theft, or an assault, in a building; or (3) enters a building and commits or attempts to commit a felony, theft, or an assault." This matches almost exactly the Penal Code's "Burglary" definition which provides:

> (a) A person commits an offense if, without the effective consent of the owner, the person:
>
> (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with the intent to commit a felony, theft, or an assault; or
>
> (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or
>
> (3) enters a building or a habitation and commits or attempts to commit a felony, theft, or an assault.

Tex. Penal Code § 30.02. Because the trial court's charge accurately instructed the jury on the law of burglary as it applies to a capital murder charge, we conclude there was no error and the harm analysis prescribed by *Almanza* is not necessary. *Dinkins*, 894 S.W.2d at 339; *see Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995) ("The State was further required to prove that appellant committed this intentional murder while in the course of committing or attempting to commit burglary of a habitation."); *Davis v. State*, 586 S.W.3d 586, 589 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) ("As correctly set forth in the charge to the jury, a person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit burglary of a habitation."); *Gibbs v. State*, 555 S.W.3d 718, 728 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("To prove that appellant committed the offense of capital murder, as charged in the indictment, the State was required to establish that appellant, while in the course of

10

committing or attempting to commit either the robbery of [the victim] or the burglary of a building owned by [the victim], intentionally caused the death of [the complainant] by shooting her with a firearm."). We overrule appellant's first issue.

### III. The trial court committed no error when it rejected appellant's requested conspiracy application instructions.

Appellant argues in his second issue that the trial court erred when it rejected his request to submit separate conspiracy application instructions, one for burglary and the second for robbery. Appellant's requested change was directed at the fifth application paragraph of the jury charge, which provides:

> If you find from the evidence beyond a reasonable doubt that the defendant, Eledis Fernandez, and Marcos Olivares, and/or Angel Lagos, and/or Edwin Olivares, and/or Jose Villa, and/or Nelson Rodriguez, entered into an agreement to commit the felony offense of burglary of a building or robbery of Ambrosio Osorio Gonzalez [the complainant] and pursuant to that agreement, if any, they did carry out their conspiracy and that in Harris County, Texas, on or about the 14th day of August, 2015, while in the course of committing such burglary of a building or robbery of Ambrosio Osorio Gonzalez [the complainant], Marcos Olivares, and/or Angel Lagos, and/or Edwin Olivares, and/or Jose Villa, and/or Nelson Rodriguez intentionally caused the death of Ambrosio Osorio Gonzalez [the complainant] by shooting Ambrosio Osorio Gonzalez [the complainant] with a deadly weapon, namely a firearm, and the murder of Ambrosio Osorio Gonzalez [the complainant] was committed in furtherance of the conspiracy and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy then [you] will find the defendant guilty of capital murder, as charged in the indictment.

In appellant's view, the phrase "of Ambrosio Osorio Gonzalez" modifies only "robbery" and not "burglary of building." As a result, appellant asserts that the unmodified charge "eliminated the necessity of proving that Ambrosio Osorio Gonzalez was the complainant in the predicate 'burglary of a building' and the

11

court's erroneous charge reduced the essential elements in the State's burden of proof."

To resolve appellant's second issue, we must examine the charge as a whole and not just its isolated parts. *Rolle v. State*, 367 S.W.3d 746, 757 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In the jury charge, the trial court instructed the jury that before it could find appellant guilty of capital murder as a principal actor, it had to:

> find from the evidence beyond a reasonable doubt not only that on the occasion in question the defendant, Eledis Fernandez, was in the course of committing or attempting to commit the felony offense of *burglary of a building or robbery of Ambrosio Osorio Gonzalez*, as alleged in this charge, but also that the defendant specifically intended to cause the death of Ambrosio Osorio Gonzalez [the complainant], by shooting Ambrosio Osorio Gonzalez [the complainant] with a deadly weapon, namely a firearm . . . .

(emphasis added)

Although the alternate aggravating offenses were combined in the above paragraph of the charge, the trial court further instructed the jury:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of August, 2015, in Harris County, Texas, the defendant, Eledis Fernandez, did then and there unlawfully, while in the course of committing or attempting to commit the *burglary of a building of Ambrosio Osorio Gonzalez*, intentionally cause the death of Ambrosio Osorio Gonzalez by shooting Ambrosio Osorio Gonzalez with a deadly weapon, namely a firearm; or
>
> If you find from the evidence beyond a reasonable doubt that in Harris County, Texas, the defendant, Eledis Fernandez, heretofore on or about the 14th day of August, 2015, did then and there unlawfully while in the course of committing or attempting to commit the *robbery of Ambrosio Osorio Gonzalez*, intentionally cause the death of Ambrosio Osorio Gonzalez by shooting Ambrosio Osorio Gonzalez with a deadly weapon, namely a firearm, . . . then [you] will find the defendant guilty of capital murder, as charged in the indictment.

(emphasis added)

Therefore, based on a review of the entire charge, we conclude that the charge did not reduce the State's burden of proof because the jury could reasonably conclude that the phrase "of Ambrosio Osorio Gonzalez" modified both "burglary of a building" and "robbery" throughout the jury charge. *See Pruett v. State*, 685 S.W.2d 411, 413 (Tex. App.—Austin 1985, pet. ref'd) ("Applying the rules of grammar and making a common sense reading of the charging instrument in this case, we find the culpable mental states of 'knowingly' and 'intentionally' alleged at the beginning of the information apply both to 'purchase an item of crafted precious metals' and 'to fail to record.'").

Our conclusion is reinforced by this court's prior decision in *Rolle*, a case presenting a similar complaint. *Rolle*, 367 S.W.3d at 757. There, the jury charge instructed the jury that it could convict Rolle of capital murder under several theories: (1) he was the principal actor while committing or attempting to commit burglary; (2) he was a party while committing or attempting to commit burglary; or (3) as a party to a conspiracy to commit burglary. *Id.* at 757–58. Finally, the trial court instructed the jury that it could convict Rolle of capital murder under a transferred intent theory. *Id.* at 758–59. The transferred-intent instruction omitted any reference to burglary, the underlying offense. *Id.* at 759. On appeal, Rolle argued that the "omission of the crucial burglary element in the transferred intent application paragraph lessened the State's burden of proof." *Id.* at 757, 759. This court rejected Rolle's argument stating:

> Viewing the charge as a whole, we reject appellant's contention that the charge was erroneous because "omission of the crucial burglary element in the transferred intent application paragraph lessened the State's burden of proof . . . ." The disputed instruction referenced capital murder "as charged in the indictment" and thereby directed the jury to the charge that appellant "while in the course and committing

13

and attempting to commit[ ] the BURGLARY OF A HABITATION OWNED BY GUILLERMO RUBIO" did "intentionally cause the death of YVONNE SANCHEZ by SHOOTING YVONNE SANCHEZ WITH A DEADLY WEAPON . . . ." The jurors heard the indictment read aloud twice, once at the beginning of voir dire and again at arraignment. As discussed above, the indictment's reference to burglary of a habitation was reinforced by additional instructions and definitions addressing burglary of a habitation as a required element of capital murder in this case. The jury answered: "We, the Jury, find the defendant, Biondi Vernard Rolle, guilty of capital murder, as charged in the indictment." Given the reference in the indictment along with additional instructions and definitions, we do not believe the transferred intent application paragraph was confusing so as to mislead the jury or cause it to believe that the element of burglary was unnecessary to convict appellant of capital murder.

*Id.* at 759.

As in *Rolle*, the disputed section of the jury charge in appellant's case concluded with a reference to capital murder "as charged in the indictment." Appellant's indictment identified the aggravating offenses as "burglary of a building of Ambrosio Osorio Gonzalez" and "robbery of Ambrosio Osorio Gonzalez." As in *Rolle*, appellant's indictment was read to the jury twice, once in voir dire and again at appellant's arraignment. In its verdict, the jury, as the jury did in *Rolle*, answered: "We, the Jury, find the defendant, Eledis Fernandez, guilty of capital murder, as charged in the indictment." We conclude that, as a result of these similarities, *Rolle* controls the outcome in this case. We hold that there was no error in the jury charge's instruction regarding the conspiracy theory of party liability because, as a result of the charge's reference to the indictment and the other instructions in the jury charge, the phrase "of Ambrosio Osorio Gonzalez" was not confusing to the jury and was properly understood as modifying both "burglary of a building" and "robbery" in the trial court's instructions. *See id.* We overrule appellant's second issue.

14

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

/s/      Jerry Zimmerer
         Justice

Panel consists of Justices Wise, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).

15