

NUMBER 13-16-00521-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

NARENDRANATH RAYAVARAPU,                                    Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

**On appeal from the 92nd District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Contreras, Longoria, and Hinojosa
Memorandum Opinion by Justice Longoria**

Appellant Narendranath Rayavarapu was convicted of sexual assault, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(a)(1) (West, Westlaw through 2017 1st C.S). He was sentenced to seven years' confinement in the Texas Department of Criminal Justice—Institutional Division. He argues on appeal that (1) the jury charge was

structurally erroneous, (2) the evidence was legally insufficient to support the conviction, and (3) he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

The State alleged that Rayavarapu committed sexual assault of complainant P.D. Rayavarapu and P.D. knew each other through a mutual friend. In May of 2015, P.D. and a couple of her friends were out for drinks at the University Drafthouse; Rayavarapu was also at the University Drafthouse having drinks with a friend. During the evening, P.D. saw Rayavarapu and stopped to talk with him and his friend. They conversed for some time at the bar, during which time P.D. chose to stay at the bar when her friends left to go home. According to P.D., Rayavarapu and his friend suggested they go back to Rayavarapu's apartment to continue drinking and to hang out, and P.D. agreed.

When P.D., Rayavarapu, and Juan Carlos Crosby, Rayavarapu's friend, arrived back at the apartment, the three had more to drink while they were watching music videos. At some point in the evening, Crosby's wife also joined them. P.D. testified that she does not remember anything after watching the music videos until the next day when she was trying to get home. P.D. explained that the next day, she felt disoriented on her drive home. She testified that once she got home, she proceeded to change and go to sleep. When she changed her clothes, she noticed she wasn't wearing any underwear and found her underwear from the previous evening in her purse, though at the time she did not think about what that meant. She then explained that she went to sleep for a "couple" of hours, though she was not sure for how long, and when she woke up, she used the restroom and discovered she had vaginal bleeding. She also noticed she had "hickies" on her neck. Shortly thereafter, P.D.'s mother came to check on her, having been

2

concerned about her whereabouts the evening before. During the discussion with her mother, P.D. testified that her mother believed that there were indications that P.D. had sexual intercourse and P.D. decided to call Rayavarapu to find out what had happened. She stated that Rayavarapu told her that they did have sexual intercourse. She did not immediately decide to press charges on Rayavarapu.

Mark Lagunez also testified for the State, explaining that he worked with Rayavarapu and that he was at Rayavarapu's apartment a day or two after P.D. Lagunez testified that Rayavarapu began telling him about a girl that he had picked up over the weekend at a bar. Rayavarapu said that she had gotten drunk and he had tried to have sexual intercourse with her, but that she kept turning him down, until she finally relented and told him "Ok, do whatever." Lagunez testified that Rayavarapu told him the sexual intercourse with P.D. was like "being with a dead fish" or "a corpse." Lagunez also told the jury that Rayavarapu showed him naked photographs of the girl on Rayavarapu's work cell phone, and it was clear to Lagunez that she was unconscious. Because of what Rayavarapu told him and showed him, Lagunez brought the information to the Edinburg Police Department as well as his company and immediate supervisor. The photographs were retrieved from Rayavarapu's phone and were turned over to the Edinburg Police Department. Lagunez testified further that he also reached out to P.D. through a mutual friend to inform her of what he saw. After P.D. learned of the photographs, she went to the station to file a report for the sexual assault.

Upon the filing of the report, Detective Ruiz of the Edinburg Police Department went and spoke to Rayavarapu's employer and Mark Lagunez. Following his visit at Rayavarapu's place of employment, Ruiz went to the address given for Rayavarapu and

3

discovered that Rayavarapu had moved out. Ruiz then placed Rayavarapu's information into the system as a "wanted person." Rayavarapu was taken into custody and arrested nearly seven months later at the Dallas airport.

Rayavarapu, through his attorney, questioned the veracity of the witnesses and suggested that P.D. may have consented to the sexual intercourse. The jury found Rayavarapu guilty. This appeal followed.

## II. LEGAL SUFFICIENCY

We begin by addressing Rayavarapu's third and fourth issues, in which he argues that the evidence was legally insufficient to support a guilty verdict. Rayavarapu contends that the State did not prove (1) that P.D. did not consent and (2) that he knew that P.D. did not consent.

### A. Standard of Review and Applicable Law

When addressing a sufficiency challenge, we review the evidence in the light most favorable to the jury's verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). We give deference to the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony and is free to accept or reject any or all evidence presented by either side. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. Malik v. State, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997). A person commits sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A).

**B.      Analysis**

Rayavarapu maintains that in order for him to be convicted of sexual assault, the State needed to prove "beyond a reasonable doubt that [Rayavarapu] knew that [P.D.] had not consented to the sexual act in question." Accordingly, he argues the evidence is legally insufficient because the State did not present evidence that P.D. did not consent to the sexual act. We disagree.

A complainant's uncorroborated testimony, standing alone, can be sufficient to support a defendant's conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (stating a conviction for sexual assault is supportable on the uncorroborated testimony of the victim if the victim informed any person, other than the defendant, of the offense within a year); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding victim's testimony of penetration by appellant, standing alone, was sufficient); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (stating testimony of victim, standing alone, was sufficient). The State has no burden to produce physical or other corroborating evidence, and the jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461

5

(Tex. Crim. App. 1991); *Lovings v. State*, 376 S.W.3d 328, 336 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Here, Rayavarapu argues that there is testimony to prove that P.D. did in fact consent to the sexual activity. He contends the evidence that Rayavarapu told Mark Lagunez that P.D. said "Ok, do whatever," after persistent requests to have intercourse from Rayavarapu, demonstrates that P.D. consented. He further argues that the evidence that Rayavarapu's friends heard P.D. giggling and making "sounds of sexual moaning" in the room with Rayavarapu confirm that she consented to the sexual activity. However, P.D. testified that after drinking a glass of vodka and watching music videos, she does not recall anything from her time at Rayavarapu's apartment, including any sort of sexual activity. She testified that she did not know she and Rayavarapu had had sexual intercourse until the next day. Further, naked photographs of P.D. were found on Rayavarapu's cell phone. According to Lagunez, the photographs showed P.D. was not conscious at the time they were taken. P.D.'s testimony coupled with the photographs and Lagunez's testimony that Rayavarapu told Lagunez that sexual intercourse with P.D. had been like "being with a dead fish" or a corpse, was evidence from which the jury could infer that P.D. was unconscious at the time and could not have given her consent to the sexual activity. *See* TEX. PENAL CODE ANN. § 22.011(b)(3), (b)(5).

Resolving any inconsistencies in the testimony in favor of the verdict and viewing the evidence in the light most favorable to the jury's verdict, we determine that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Bynum v. State*, 767 S.W.2d 769, 776 (Tex. Crim. App. 1989) (en banc). We overrule Rayavarapu's third and fourth issues

6

## III. JURY CHARGE ERROR

By his first two issues, Rayavarapu contends that the jury charge was structurally erroneous because it omitted the "statutorily essential element" that "he must have been aware at the time and place in question" that P.D. did not consent.

### A. Standard of Review and Applicable Law

We review a claim of jury charge error through a two-step process. *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015). We first determine whether there was error in the charge and, if so, whether that error was harmful. *Id.* Preservation of error becomes an issue in the second step because it determines the degree of harm required for reversal. *Id.* If error was preserved, we must reverse if the record shows the defendant suffered "some harm" as a result of it. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Conversely, we will not reverse for unpreserved error unless the defendant shows that the error was "fundamental" and he suffered "egregious harm" from it. *Id.*

### B. Analysis

We first begin our discussion by addressing the law applicable to the case. Rayavarapu was convicted of sexual assault. *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A). The elements of sexual assault, as alleged in the indictment, are as follows:

(a) A person commits an offense if:

(1) the person intentionally or knowingly:

(A) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent.

7

*Id.* Lack of consent is a statutory element of sexual assault as charged in the indictment.

*Id.* The statute enumerates when conduct is committed without the consent of the other person. The two relevant definitions of consent provided to the jury in this case were:

> (3) the other person has not consented and the actor knows the other person is unconscious or physically unable to resist; or

> (5) the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring.

*Id.* § 22.011(b)(3), (b)(5). Rayavarapu argues that the trial court erred by omitting from the charge that the jury needed to determine that he "knew that [P.D.] had not consented." Texas Code of Criminal Procedure Article 36.14 details the requirements and procedures for the delivery of the court's charge to the jury. TEX. CODE CRIM. PROC. ANN. art. 36.14. It states, "the judge shall ... deliver to the jury ... a written charge distinctly setting forth the law applicable to the case." *Id.* Here, the charge read, in part:

> Our law provides that a person commits the offense of Sexual Assault if the person intentionally or knowingly (1) causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent, or (2) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or (3) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.

> A sexual assault is without the consent of the other person if the other person has not consented and the actor knows the other person is unconscious or physically unable to resist.

> Further, a sexual assault is without the consent of the other person if the other person has not consented and the actor knows the other person is unaware that the sexual act is occurring.

Rayavarapu argues that the charge should have also included the "seriously contested statutory essential element of the sexual assault" that he knew that P.D. had not consented. He bases his argument on the inclusion of an additional section of the Texas

8

Penal Code, specifically, section 6.03(b). *See* TEX. PENAL CODE ANN. § 6.03(b) (West, Westlaw through 2017 1st C.S.) ("a person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."). Rayavarapu would have the essential elements of sexual assault include "knowing that penetration is without the other person's consent." This addition, however, is not a specific element of the charged crime. *See id.* § 22.011(a)(1)(A). Rayavarapu provides no authority to support the additional element he seeks to add to the charge. Furthermore, in addition to the elements of a sexual assault as charged in the indictment, the trial court also gave the jury the definitions of "intentionally" and "knowingly" as set forth in the Texas Penal Code. *See id.* § 6.03(a), (b). The jury charge correctly described and applied the elements of sexual assault. We find no error in the charge. Accordingly, we need not address harm. Rayavarapu's first two issues are overruled.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his fifth and sixth issues, Rayavarapu argues that he received ineffective assistance of counsel. His argument is based on his trial counsel's failure to object to the trial court's charge omitting an instruction that the State needed to prove that "Mr. Rayavarapu knew that [P.D.] had not consented." In this memorandum opinion, we have addressed the issue of whether the court erred by not including such an instruction and we found that there was no error. Because there was no error in the jury charge, trial counsel's lack of objection to said charge would not lend itself to create an ineffective

9

assistance of counsel argument; counsel was not deficient by not objecting to a proper jury charge. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (requiring a defendant to show both (1) that his counsel performed deficiently and (2) that the deficient performance prejudiced the defendant's case in an ineffective assistance of counsel claim). Therefore, we overrule Rayavarapu's fifth and sixth issues.

## V. CONCLUSION

We affirm the judgment of the trial court. Any pending motions are dismissed as moot.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of July, 2018.