

# NUMBER 13-23-00387-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**BRYANT CHARLES PIERCE,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                        **Appellee.**

---

## ON APPEAL FROM THE 117TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

---

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Silva
### Memorandum Opinion by Chief Justice Contreras

After a jury trial, appellant Bryant Charles Pierce was convicted of assault causing bodily injury, a Class A misdemeanor, and was sentenced to one year in the Nueces County Jail. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b). On appeal, Pierce argues: (1) the jury's rejection of his deadly force in self-defense and defense of third persons theories was supported by insufficient evidence; and (2) the trial court erred by failing to

include a charge instruction regarding deadly force in the defense of property. We affirm.

## I. BACKGROUND

Pierce was charged with committing aggravated assault with a deadly weapon, a second-degree felony, against 62-year-old Arnold Montoya on or about May 15, 2021. *See id.* § 22.02(a)(2).

At trial, Montoya testified that Sandra Calvo is his ex-girlfriend and ex-fiancée. He said they were together for six years until he "had to leave because [he] didn't care for her parenting skills that she had with her son." After they broke up, Calvo started dating Pierce. Montoya testified without objection that, based on what Calvo said about Pierce, he believed Pierce to be "a dangerous man" who was "weird and crazy" and who "carried weapons." According to Montoya, Calvo "said that . . . she didn't know how to end it and she was afraid of him."

Montoya explained that, in early May of 2021, after the two had already split up, Calvo stopped by the auto parts shop which Montoya owns and she explained that she was going to Houston with her son. However, when Calvo departed, Montoya noticed that she did not go in the direction of the expressway towards Houston. Montoya found this unusual, so he followed her in his car. At some point, Calvo pulled off into a drug store parking lot and Montoya could see her talking on the phone; she then left the parking lot and continued in the same direction she had been going before. Montoya testified: "And then it just hit me, well, hell, that's probably where that guy lives, you know, where Mr. Whoever [lives]. I didn't know who he was at the time . . . . He probably lives in that area."

On May 15, 2021, Montoya woke up and "had this strange feeling that something was wrong with [Calvo]," so he drove by her house, and he noticed that her Jeep was not

2

there. He then drove to the area of the drug store where Calvo had stopped the previous week. He proceeded down an adjacent street and saw Calvo's Jeep parked in front of a house. Montoya said he got out of his car and took a picture of another vehicle parked on the premises "to get the license plate number." Montoya noticed there was no number on the house, so he looked at the neighboring houses to figure out the address.

Montoya said: "I went up to the door and I rang it [sic] three times, one, two, three."[1] No one answered, so Montoya got in his car and left. He testified: "And I just figured, hell, you know, at least I know where—if something happens to [Calvo], I know what I could tell the police, you know, that [is] where he lives or whatever. So, I pretty much had done my whole mission." But Montoya's mission was not yet accomplished:

> After I found out who he was exactly and through the computer[2] when I got to the shop, I was mad a little bit. And I texted [Calvo] and I said, well, I know—I know where you're at now, you know. And she says where? You know, she was trying to pretend like she wasn't there. I said, [Calvo], I know where your Jeep is, you can't lie. . . .
>
> I asked [sic] her in a text, tell him to expect to see me.[3] . . . And then—and then she said, well, come back, he wants to see you.

Montoya returned to Pierce's house and rang the doorbell. He said he "barely got to finish the first ring" when Pierce opened the door and began hitting him with a wooden stick. Montoya said Pierce hit him around twenty times—on his side, on his head, and on his back. Pierce then sprayed his front porch with water to remove the blood. Photos of

---

[1] A photo of Pierce's house showed that a large red "NO TRESPASSING" sign was posted prominently above the front porch. Montoya denied seeing the sign.

[2] Montoya later explained: "I have a police friend, a retired police friend, and his wife did that for me. I gave the name and she sent back a picture of him on Facebook. It was an old picture, but it was still him."

[3] When asked what he meant by this remark, Montoya stated: "Well, because I wanted to go talk to him. I wanted to find out if she—if he was this crazy guy that she was talking about or if she was making it up."

Montoya, bloodied and with multiple bruises around his body, were taken by police at the scene and entered into evidence.

Pierce testified that he is 56 years old and has lived on Tyler Avenue in Corpus Christi for twenty-three years. He admitted hitting Montoya with a stick "three or four times" on the morning of May 15, 2021; however, he said it was "[i]n self-defense." Pierce stated that Montoya was on his front porch and "trying to get in" his house by "[r]eaching up and grabbing the handle and pulling on the door." According to Pierce, Montoya was "irate" and asked to speak to Calvo, and Calvo was "terrified." Pierce testified:

> I said, "Get off my property." And he went, he made a movement like he was going to go around me and go into the house, and that's when I looked down and saw the stick, and picked the stick up. And I told him, "Get off my property, I don't want to hear what you want to say. Get off my property."
>
> And he reached around to grab a weapon, he reached behind his back with his left hand,[4] and that's when I hit him.

Pierce acknowledged that he later sprayed water on the porch to remove Montoya's blood "so it wouldn't stain the wood." He agreed with defense counsel that he felt he, Calvo, and his property were "in danger" that day. He further agreed that he owned a gun but chose not to brandish or use it on that occasion.

The jury was instructed on the justifications of (1) deadly force in self-defense and (2) deadly force in defense of a third person. *See id.* §§ 9.32, 9.33. It found Pierce guilty of the lesser-included offense of assault causing bodily injury, *see id.* § 22.01(a)(1), and this appeal followed.

## II.    EVIDENTIARY SUFFICIENCY

Pierce argues by his first issue that the trial evidence was insufficient to support

---

4 On cross-examination, Pierce conceded that he did not actually see Montoya with a weapon.

4

the jury's implicit rejection of his defensive theories.

## A.     Standard of Review and Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a sufficiency review, we view the evidence in the light most favorable to the verdict and consider all of the admitted evidence. *Id.* We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *See id.*; *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses"; therefore, "[w]hen the jury could reasonably draw conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict." *Stahmann*, 602 S.W.3d at 577; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct charge in this case would instruct the jury to find Pierce guilty if he intentionally, knowingly, or recklessly caused bodily injury to Montoya. *See* TEX. PENAL CODE ANN. § 22.01(a)(1). It would also instruct the jury that Pierce was justified in using

deadly force[5] against Montoya (1) if he was justified in using force against Montoya under § 9.31(a),[6] and (2) "when and to the degree [Pierce] reasonably believe[d] the deadly force [wa]s immediately necessary . . . to protect [himself] against [Montoya]'s use or attempted use of unlawful deadly force." *See id.* § 9.32(a). And, it would instruct the jury that Pierce was justified in using force or deadly force to protect Calvo if: (1) "under the circumstances as [Pierce] reasonably believe[d] them to be, [Pierce] would be justified under [§§] 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or deadly force he reasonably believe[d] to be threatening [Calvo]"; and (2) Pierce "reasonably believe[d] that his intervention [was] immediately necessary to protect [Calvo]." *See id.* § 9.33(a).

A "reasonable belief" is one "that would be held by an ordinary and prudent [person] in the same circumstances as the actor." *Id.* § 1.07(a)(42). An actor's belief that deadly force was immediately necessary is "presumed to be reasonable" if the actor: (1) "knew or had reason to believe that the person against whom the deadly force was used . . . was attempting to enter unlawfully and with force, the actor's occupied habitation"; (2) "did not provoke the person against whom the force was used"; and (3) "was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used." *Id.* § 9.32(b).

> A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly

---

[5] "Deadly force" means "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." TEX. PENAL CODE ANN. § 9.01(3). Pierce has not disputed that the force he used against Montoya was "deadly force."

[6] Under § 9.31(a), Pierce was justified in using force against Montoya "when and to the degree [he] reasonably believe[d] the force [wa]s immediately necessary to protect [himself] against [Montoya]'s use or attempted use of unlawful force." *Id.* § 9.31(a).

force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by [§ 9.32].

*Id.* § 9.32(c); *see Morales v. State*, 357 S.W.3d 1, 4 (Tex. Crim. App. 2011) (noting that, "[b]efore 2007, the self-defense statute also imposed a requirement that 'a reasonable person in the actor's situation would not have retreated'"). With some exceptions not applicable here, the use of force against another is not justified "in response to verbal provocation alone" or "if the actor provoked the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(b)(1), (4).

Deadly force in self-defense and deadly force in defense of third persons are not affirmative defenses but are rather "defenses to prosecution" under penal code § 2.03. *See id.* § 2.03; *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). For this type of defense, a defendant bears the burden of production, which requires the production of some evidence that supports the particular defense. *Zuliani*, 97 S.W.3d at 594 (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)). Once the defendant produces such evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id.*; *see* TEX. PENAL CODE ANN. § 2.03(d). The burden of persuasion is not one that requires the production of evidence; rather, it requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594.

When a jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Id.* In reviewing the sufficiency of the evidence when a jury has rejected a justification defense, in addition to considering the essential elements of the offense, we must determine, after viewing all the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found against the appellant on the defensive issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914.

7

**B.    Analysis**

In arguing that the evidence did not support the jury's rejection of his defensive theories, Pierce quotes *Ryser v. State* for the proposition that "self-defense must be viewed from the relevant actor's perspective, taking into account his knowledge at the time he acted, and not the viewpoint of the jury that has the benefit of hindsight in evaluating whether the actor actually was in danger." 453 S.W.3d 17, 31 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). He argues that he had a reasonable belief that force was immediately necessary because Montoya was "stalking [Calvo]" and had instructed Calvo to "tell him to expect to see me." He further observes that there is no evidence that he provoked Montoya or was engaged in criminal activity at the time he used force against Montoya. *See* TEX. PENAL CODE ANN. § 9.32(b)(3), (c). Pierce argues that "[o]nce Montoya trespassed onto [his] property for the second time, and attempted to make entry into [his] residence, [he] had no duty to retreat from Montoya and had a right to protect both his property and hi[m]self."

Pierce is correct that, under § 9.32(c), he had no duty to retreat from Montoya before using deadly force. However, that does not automatically mean that Pierce's belief that deadly force was immediately necessary was reasonable—it merely means that his failure to retreat cannot be considered in making that determination. *See id.* § 9.32(d) ("For purposes of Subsection (a)(2), in determining whether an actor described by Subsection (c) reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat."); *see also Morales*, 357 S.W.3d at 5 (observing that, when "no duty to retreat" provisions such as § 9.32(c) do not apply, "the failure to retreat may be considered in determining whether a defendant

8

reasonably believed that his conduct was immediately necessary to defend himself or a third person"). The jury was instructed as such in the charge, and Pierce does not point to anything in the record indicating that the jury disobeyed this instruction. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (noting that "we generally presume that a jury will follow the judge's instructions").

Here, the reasonableness of Pierce's belief that deadly force was immediately necessary was the only issue in dispute at trial, and it was the subject of conflicting evidence. In particular, Pierce testified that Montoya was "trying to get in" his house by "grabbing the handle and pulling on the door." This testimony, if believed, would arguably support a finding that Montoya "attempt[ed] to enter unlawfully and with force [Pierce's] occupied habitation," which would give rise to a presumption that Pierce's belief was reasonable. *See* TEX. PENAL CODE ANN. § 9.32(b)(1)(A). Pierce also testified that Montoya "reached around to grab a weapon." However, Montoya testified that he merely rang the doorbell, which cannot reasonably be described as "attempting to enter unlawfully and with force," *see id.*; and it is undisputed that Montoya was not, in fact, armed with a weapon. Pierce argues that "[p]arts of Montoya's testimony w[ere] questionable," such as his claim that he did not know who Pierce was when he approached his house. But the jury alone is empowered to assess the credibility of witnesses. *Stahmann*, 602 S.W.3d at 577. Accordingly, we must presume that the jury believed Montoya's version of events and did not believe Pierce's. *See id.*

Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found against Pierce on his defensive issues beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. His first issue is overruled.

9

### III.    JURY CHARGE ERROR

By his second issue, Pierce contends the trial court erred by failing to instruct the jury on the justification of defense of property.

**A.    Standard of Review and Applicable Law**

After a jury trial in a felony case, the trial court is required to submit to the jury a "written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14. We review the trial court's refusal to submit a jury charge instruction for abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to guiding rules and principles. *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021).[7]

Texas Penal Code § 9.41(a) states:

> A person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property.

TEX. PENAL CODE ANN. § 9.41(a). And § 9.42 provides:

---

[7] If we find error in a jury charge, and the defendant preserved the alleged error by a timely request or objection, then we must reverse as long as the error was not harmless. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *see Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984). But if a charge error is not preserved at trial, it requires reversal only if appellant suffered "egregious harm" as a result. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013).

At the charge conference, defense counsel requested an instruction on "defense of property." Nevertheless, Pierce concedes in his brief that any error should be reviewed under the "egregious harm" standard "[b]ecause [defense] counsel did not object to the denial of the defense of property instruction." In light of our conclusion that the trial court did not err, we need not decide which harm standard would apply here. *See* TEX. R. APP. P. 47.1.

10

A person is justified in using deadly force against another to protect land or tangible, movable property:

(1)     if he would be justified in using force against the other under [§] 9.41; and

(2)     when and to the degree he reasonably believes the deadly force is immediately necessary:

    (A)     to prevent the other's imminent commission of arson, burglary, robbery, aggravated robbery, theft during the nighttime, or criminal mischief during the nighttime; or

    (B)     to prevent the other who is fleeing immediately after committing burglary, robbery, aggravated robbery, or theft during the nighttime from escaping with the property; and

(3)     he reasonably believes that:

    (A)     the land or property cannot be protected or recovered by any other means; or

    (B)     the use of force other than deadly force to protect or recover the land or property would expose the actor or another to a substantial risk of death or serious bodily injury.

*Id.* § 9.42.

A defendant is entitled to a jury instruction on a justification defense "if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017) (citing *Elizondo v. State*, 487 S.W.3d 185, 196 (Tex. Crim. App. 2016)). "Raised by the evidence" means "there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that th[e] element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

**B.     Analysis**

In his brief, Pierce argues that the trial court erred in failing to include an instruction

on the defense of property in the jury charge "because the evidence showed that [he] reasonably believed that deadly force was immediately necessary [(1)] to prevent Montoya from . . . trespassing upon his property, and (2) [to prevent] Montoya's unlawful interference with the property, i.e., attempting to make entry into his residence." In support of this argument, Pierce again points to his testimony that Montoya was "trying to get in" his house by "grabbing the handle and pulling on the door" and that he "reached around to grab a weapon."

This testimony arguably supports an instruction under § 9.41 in that, if believed, it may establish that Montoya was trespassing or unlawfully interfering with Pierce's property. *See* TEX. PENAL CODE ANN. § 9.41(a). However, it is undisputed that, in this case, Pierce used deadly force against Montoya. *See id.* § 9.01(3) (defining "deadly force" as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury"). As the State notes, for Pierce to be entitled to the justification defense for the use of deadly force to protect property under § 9.42, there must have also been evidence that Pierce reasonably believed his deadly force was "immediately necessary . . . to prevent" Montoya's "imminent commission of arson, burglary, robbery, aggravated robbery, theft during the nighttime, or criminal mischief during the nighttime." *Id.* § 9.42(2). Additionally, an instruction under § 9.42 would be warranted only if there was evidence that Pierce reasonably believed (1) his property "c[ould ]not be protected . . . by any other means," or (2) "the use of force other than deadly force to protect . . . the . . . property would expose [Pierce] or another to a substantial risk of death or serious bodily injury." *Id.* § 9.42(3).

Pierce directs us to no evidence in the record establishing these additional

12

elements required to justify the use of deadly force. We note that, although Pierce's testimony may arguably support a finding that Montoya was attempting to commit burglary, *see id.* § 30.02(a)(1) (providing that a person commits burglary if, without the effective consent of the owner, the person . . . enters a habitation . . . with intent to commit a felony, theft, or an assault"), there is no suggestion that the use of non-deadly force would have exposed anyone to a risk of death or serious injury or that Pierce's property could not have been protected by any means other than deadly force. *See id.* § 9.42(3). Accordingly, Pierce was not entitled to an instruction on defense of property under § 9.42.

We overrule Pierce's second issue.

## IV.   CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
5th day of December, 2024.